COLEMAN et al., Respondents, v. HIMMELBERGER-HARRISON LAND AND LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, March 1, 1904.

1. PLEADING: Changing Cause of Action. In an action for damages for the death of plaintiff's son, caused by the alleged negligence of the defendant, an amended petition based upon the same death, which attributed such death to facts, as constituting the defendant's negligence, different from the facts alleged in the first petition, did not change the cause of action.

2. MASTER AND SERVANT: Minors: Dangerous Employment. Where plaintiff's evidence showed that he hired his son, a minor, to work for the defendant, and expressly forbade his being employed in a branch of the service which was hazardous, the defendant was liable for the death of the boy while engaged in that employment unless it could be shown that his death was the result of his own willful act; negligence on his part would not excuse the willful misconduct of the defendant in placing him in a place of danger against the express directions of his father.

3. ————:————: Emancipation. It was error to exclude testimony on the part of the defendant, tending to show that the father had emancipated the boy prior to the time he was hired to the defendant.

4. RAILROAD COMPANIES: Switch Frogs. A lumber company which had a license from a railroad company to operate log trains over a branch of the latter's road, and maintained a section boss and gang of section men to keep that part of the road in repair, is amenable to the provisions of sections 1123 and 1125, Revised Statutes of 1899, and subject to the penalty therein, for failure to block switches, frogs, etc.

5. ————: ————: Instruction. In an action for damages on account of the death of plaintiff's son, alleged to have been caused by the son's having caught his foot in an unblocked frog, it was error to give an instruction to the jury based upon such facts and ignoring the question as to whether such frog was within the territory where the statute required the defendant company operating the road to block frogs, where the evidence is not clear as to the location of the frog.

6. ——————: ——————: **Master and Servant: Limit of Liability.** Where the facts showed that the frog, where the son's foot was caught, if that was the cause of his death, was not on the side of the track where he was required to work in the pursuance of his duty, the defendant was not liable for the injury resulting unless intervening negligence was shown on the part of defendant that directly contributed to the injury.

7. **MINORS: Degree of Care Required.** A minor is bound to use that care which persons of his age, capacity and intelligence are capable of using in like circumstances, and a youth of eighteen years of age, of ordinary intelligence and experience, should show some incapacity besides his minority to warrant the court in instructing the jury that he was not required to use the same care as an adult.

8. **DAMAGES: Measure of.** In an action for damages, under sections 2865 and 2866, by parents for the death of their son, caused by the defendant's negligence, it was error to instruct the jury that they could assess such damages as, in their judgment, would compensate the plaintiffs for the loss of their son, without giving more definite instructions as to the measure of such damages.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley,* Judge.

REVERSED AND REMANDED.

*L. W. Fisher, R. B. Oliver* and *Russell & Deal* for appellant.

(1) The court should have stricken out the plaintiffs' amended petition, because it was inconsistent with, contradictory of, and a departure from the allegations of the original petition. The original petition charges that the accident occurred on the defendant's "Tramroad" because of the negligence of the engineer, a fellow-servant. The amended petition charges that it occurred on the St. Louis & Gulf Railway because of the negligence of the defendant in not blocking the frogs of said railway. This was an entire change of the cause of action and required additional and different proof. Sims v. Field, 24 Mo. App. 557; Lumpkin v. Collier,

69 Mo. 170. (2) The court should have sustained a demurrer to the plaintiffs' testimony. Because the petition and evidence both show that the accident occurred upon a railroad not owned or leased by the defendant, it merely had the right to run log trains over it. Because the law did not require the defendant to block the frogs of the St. Louis & Gulf Ry. Co., and its failure to do so was not negligence. Because there was no competent testimony showing that the accident was the result of anyone's negligence save his own. Because even if the accident was caused by the negligence of the engineer, he was a fellow-servant with the deceased and the defendant would not be liable for his negligence. R. S. 1899, sec. 2875; Dysart v. Railway, 145 Mo. 83. (3) The defendant offered, and should have been permitted to prove, that the deceased had been released by his father and was working for himself at the time of the accident. The law which authorizes damages in such cases, provides that it shall be "with reference to the necessary injury resulting from such death." R. S. 1899, sec. 2866. Damages in such cases are compensatory, and this evidence was certainly competent and important for the jury to hear and consider in determining the question of the plaintiffs' damages. Hennessy v. Brewing Co., 63 Mo. App. 111; s. c., 145 Mo. 104; Parsons v. Railway, 94 Mo. 286. (4) Instruction No. 2, given for the plaintiffs, was erroneous. We know that the courts have sometimes held that children of young and tender age, not expected to exercise the same care as adults, but we know of no case where the courts have relaxed the rule requiring care on the part of an employee who was over eighteen years of age, working for himself and weighing 150 pounds. Van Natta v. Railway, 133 Mo. 13; Eswin v. Railway, 96 Mo. 290. (5) Instruction No. 3, given for the plaintiffs, was erroneous because it assumed that the defendant was guilty of a wrong, and because the measure of damages was not properly defined. This instruction authorized a

recovery of five thousand dollars, the amount prayed for in the petition, without any regard whatever to the injury done or the loss sustained. Knight v. Lead Co., 75 Mo. App. 541; Flint v. Railway, 38 Mo. App. 94. This error was not cured by giving other correct instructions. Jones v. Talbot, 4 Mo. 279; Hickman v. Griffin, 6 Mo. 37.

*Joe W. Moore, J. A. Stallcup* and *H. C. O'Bryan* for respondents.

(1) The defendants contend that the amended petition should be stricken out because it changes the cause of action. In Lincoln v. Railroad, 75 Mo. 27, it was held that in an action for damages for the killing of stock because of the failure of the railroad company to maintain cattle guards, the petition could be amended alleging that the injury was caused by a defective crossing. Gurley v. Railroad, 35 Mo. App. 87; Robertson v. Railroad, 21 Mo. App. 633. (2) The fact that the Himmelberger-Harrison Land & Lumber Company had operated their trains daily over the St. Louis & Gulf Railroad, in absence of proof of lessor and lessee, would constitute, to say the least, the relation of licensor and licensee, and the courts of this State have held that the same responsibility attaches to the relationship of licensor and licensee as to that of lessor and lessee. Mc-Coy v. Railroad, 36 Mo. App. 445. Lessees or operators of a railroad are equally as liable as the lessors or owners for damages arising out of injuries sustained by reason of unlocked frogs or guard rails. R. S. 1899, sec. 1125. (3) There was no error in refusing to admit evidence on the emancipation or release of Emmet Coleman by his father. The parent is entitled to the services of the child. Brown on Domestic Relations (2 Ed.), 81. This case arises out of a violation of a statutory law under R. S. 1899, sec. 1123, which makes

it a penal offense for owners or lessees to operate a train of cars over a road with unlocked frogs or guard rails. In cases of this kind the damages are not solely compensatory and are not confined to strict computation of the earnings of the deceased. 94 Mo. 286. (4) The contention is made by the appellants that the petition contains no allegation concerning the guard rails and instruction number one is objected to for this reason. The language of the petition in this connection is as follows: ''They further state that said track and sidetracks were unsafe and dangerous, in that at no place thereon were the frogs of the switches and guard rails blocked, as the law directs. (5) There was no error in instruction number two for plaintiffs. It is a question of fact for the jury to determine what degree of care should be required of a minor working in any capacity. Ridenhouse v. Railway, 102 Mo. 270; Spillane v. Railway, 111 Mo. 555; Burger v. Railroad, 112 Mo. 238. (6) There was no error in instruction number three for plaintiffs. An instruction general in its nature as to the measure of damages is not erroneous. Browning v. Railroad, 124 Mo. 55; Haymaker v. Adams, 61 Mo. App. 581.

### STATEMENT.

Omitting caption, the original petition is as follows:

''Plaintiffs state that the defendant is a corporation duly organized under the laws of the State of Missouri and as such corporation is now, and has for a long time been the owner of and engaged in running and operating a locomotive and train of cars for the transportation of said logs and freight, from a point about fifteen miles below Morehouse, in New Madrid county, north to and in the town of Morehouse, in said county on its line of railroad by it constructed, operated, managed and known as the tramway or tramroad and fur-

ther, plaintiffs state that in the month of July, 1902, defendants ran and operated said tramway and railroad on its said lines in the town of Morehouse aforesaid, by running its engine and log cars thereto attached on its tracks in said town. That on the twelfth day of July, 1902, the plaintiffs' son, Emmett Coleman, a minor, without the knowledge and consent of the plaintiffs and against his express orders to the defendant, was placed at work by defendant on its train of log cars in said town of Morehouse as brakeman and fireman. That while said engine and cars were switching on its track and after the said switch had been made and when it was the duty of the engineer in charge of said train to slow up or check the speed of said train so that plaintiffs' said son could again get upon the cars as brakeman, yet nevertheless, said engineer negligently and carelessly failed to slow up or stop said train, although signalled so to do, by plaintiffs' said son, after so signalling said engineer and supposing said signal would be heeded or that in any event the speed of said train would be sufficiently checked to enable him to get thereon in the discharge of his duties undertook to get upon said train as brakeman, that in such effort, owing to the speed of the train and the engineer's failure to check the same, he fell between the cars of said train and was run over by the entire train, mangled and killed.

"That it was the duty of said engineer after said switch had been made to stop said train or sufficiently check its speed as to enable plaintiffs' son to get thereon, both of which the said engineer carelessly and negligently failed to do. That plaintiffs' said minor son was by the defendant carelessly, negligently and against the express orders of plaintiff to defendant, placed at work as fireman and brakeman on said train.

"Plaintiffs further state that their said son was of the age of eighteen years, unmarried and without issue, was strong and vigorous in mind and body and was

capable of earning one hundred to one hundred and fifty dollars per month.

"Plaintiffs further state that by reason of the death of their son resulting from said carelessness and negligent acts of defendant he has not only lost the use of the service of his said son but also his companionship and presence and has suffered great anguish of body and mind.

"And plaintiffs further state that by the aforesaid negligence of defendant in the killing of their minor son they have been damaged in the sum of five thousand dollars for which with costs they ask judgment."

At the March term of the circuit court, plaintiffs filed the following amended petition:

"Plaintiffs state that they are husband and wife, and was the father and mother of one Emmett Coleman, a minor of the age of eighteen years, who was killed on the twelfth day of July, 1902, in New Madrid county. That said Emmett was single and unmarried, and left no children or their descendants.

"That on the twelfth day of July, 1902, and now defendant was and is a corporation organized under the laws of Missouri under the corporate name as styled above, and was engaged in the manufacture of lumber and building material; that it owned large plants for such purposes and large bodies of timbered lands from which it cut and from which it transferred saw stocks for manufacture at their said plants.

"That said defendant had large forces under its employment, getting out said stocks, and they transported said stocks from the forest where cut to the mill and plants where manufactured over the tracks, side tracks and switch tracks of a certain railroad known and incorporated under the corporate name of the St. Louis & Gulf Railway, and that it operated locomotives, engines and cars on said track by servants and agents under its employment upon which to transport said saw stocks.

"That on, to-wit: twelfth July, 1902, said plaintiffs had hired their son Emmett to said defendant to serve and work in and upon certain section work on said road and expressly and positively forbade the defendant to use the service of said Emmett in the operation or in connection with the operation of said trains, or locomotive engine.

"They further state that said track and side track were unsafe and dangerous in that at no places thereon were the frogs of the switches or guard rails blocked as the law directs, which facts were well known to the defendant. That notwithstanding the dangerous and unsafe tracks, rendered so by unlocked frogs and switches, and notwithstanding the positive prohibition of plaintiffs to defendant, the defendant wantonly and negligently put said Emmett to work in the capacity of a fireman, switchman, brakeman and operator of engine and cars, and while so employed and while exercising due care and diligence said Emmett's foot became caught and fastened in an unblocked frog on said track, and, though he gave warning of his peril, the locomotive engineer in defendant's employ carelessly and negligently ran the engine and cars over said Emmett, inflicting painful and mortal wounds upon his body from which he died on the same day. They further charge that said locomotive engineer was unskilled in the operation of engines, which fact was also known to the defendants.

"They further state that Emmett had an earning capacity of fifty dollars per month, that by reason of his death they have lost his wages and company. That they are damaged thereby in the sum of five thousand ($5,000) dollars, in which sum they pray for judgment and for costs."

Defendant moved the court to strike out the amended petition on the following grounds:

"Because the same sets up a cause of action not embraced in the original petition and is a departure from the original cause of action in this, that the said original

Coleman v. Land & Lumber Co.

petition was based upon the alleged negligence of the engineer, a fellow-servant, while the said cause of the amended petition is based upon the alleged and pretended negligence of the defendant.

"Because the said amended petition would require entirely different and additional proof from the cause of action alleged in the original petition."

The motion to strike out was overruled by the court and the defendant filed the following answer:

"Now comes the defendant and for answer to the plaintiffs' petition denies each and every allegation therein contained, that is not hereinafter admitted.

"Defendant admits that it is a corporation under the laws of Missouri, and as such engaged in the manufacture of lumber and building material.

"Further answering, the defendant admits that Emmett Coleman was employed by it and was in its employ on the twelfth day of July, 1902, as brakeman or switchman and that he was on the said date accidentally run over and killed by a train of cars, operated by the defendant's employees upon railroad track owned and controlled by the St. Louis & Gulf Railroad Company.

"Defendant further answering, says that Emmett Coleman was at the time of his injury an employee of the defendant and by accepting such employment he thereby assumed all risks incident to the ordinary discharge of said duties as were imposed upon him and all risks that might arise by reason of the negligence of his co-employees and fellow-servants.

"The defendant further says that the injury received by the said Emmett Coleman was the result of his own negligence and carelessness in slipping down or falling down in front of a moving train.

"Wherefore the defendant asks judgment for costs."

A reply was filed denying the new matter alleged in the answer.

The evidence is that defendant operated a large

plant for the manufacture of lumber at Morehouse, Missouri; that south of Morehouse it owned a large tract of timber lands from which it supplied its mills with saw logs. Logs were hauled to the mill over the St. Louis & Gulf Railroad on tramcars owned by the defendant. It appears from the evidence that the defendant constructed a railroad from Morehouse to its timber lands which was afterwards taken in by the St. Louis & Gulf Railroad Company under some arrangement not disclosed by the record, by which the defendant was permitted to haul, with its own engine and cars logs from its lands to Morehouse, and that it kept that part of the road in repair but had no lease on it, but was operating it under a license to run its log trains over the road. About nine o'clock a. m., July 12, 1902, Emmett Coleman, while working in the capacity of brakeman and switchman on one of defendant's log trains, was run over and injured by the train, from which injury he died in the afternoon of the same day. He was eighteen years and two months old on the day of his death. Plaintiffs are his father and mother. J. H. Himmelberger was the president and general superintendent of the defendant. Alex Mobley was its section boss. J. F. Vickery was the engineer in charge of the train that ran over Emmett Coleman. Prior to June 1, Emmett Coleman had been employed by defendant through Mobley, its agent, and was working under him as a section hand on the railroad track. He had never performed any train work prior to July 12. On the morning of the accident one of the train men was sick and Coleman was ordered by Mobley to take the place of the sick man. He went to work on the train about six o'clock a. m. The train consisted of an engine, tender and two tram or log cars. These cars are described as having no platform or floor. They were constructed for the sole purpose of hauling logs. The engineer wanted to back in on a Y at Morehouse; to do this it was necessary to throw a switch and Coleman

was directed to throw the switch. Forty-six feet west from the switch block and in the direction the train was backing, was an unblocked frog on the opposite side of the road from the switch block. After the switch was thrown the train moved back in obedience to a signal given by Coleman, according to defendant's evidence. In backing it passed over the feet and legs of Coleman, and he was found on the track between the rails, fifty-five to sixty feet west of the switch, and twenty to twenty-five feet beyond and west of the frog. In the frog was found the heel of one of Coleman's shoes and a part of one of his toes. His hat and pocketbook were picked up between the switch and the frog. Plaintiffs and a number of other witnesses testified that Emmett Coleman was conscious after he was taken to his home (a quarter of a mile from the place of the injury) and that he stated to his father and mother that he caught his foot in the frog, saw that he could not get out and gave three signals to the engineer to stop and if he had paid any attention to the signals he could have been saved. The father of the boy testified that he gave his consent for the boy to work on the section, but said: "I told Mobley I wanted him to take the boy down on the section and work him and treat him right, and if he gets out of line you tell me and I will put him in line. I told him I wanted him to keep him there the year round, to keep him out of all danger, and not to work him on any train or machinery, and if any change is made to let me know, and I would look after that myself, that we would consult about any changes." That the boy was put to work on the train without his knowledge or consent; that he was under age and awkward but was large and strong and weighed about one hundred and fifty pounds. The evidence shows the boy was earning one dollar and twenty-five cents per day as a section hand and that he was to receive one dollar and fifty cents a day as a brakeman. The father testified that he received the earnings of his son. The evidence for the defend-

ant shows that in the situation he was in when he threw
the switch, the boy should have stood at the switch block
and mounted the engine as it passed by stepping on the
footboard on the front part of the engine; that if he had
done this, even if he missed his footing and fell, he
would not have fallen under the engine and
would have escaped injury. It also shows that Mobley
was on the engine at the time, performing the duties of
fireman. He testified that when Coleman threw the
switch he gave the signal to back up, and that he re-
peated the signal to the engineer and the train was then
backed up. The engineer testified that he did not see
Coleman at the switch, that he was not visible to him;
that he knew nothing about his whereabouts until the
alarm was given after the train passed over him.

Isaac Overman, a witness for defendant, testified
that he was sitting on the back end of the tender and
saw Coleman when the train was backing up; that Cole-
man gave the signal to back up, and as the cars were
backing down the side track, he tried to get on the first
car at the front end, that he placed his foot on the box-
ing over the axle of the wheel of the car and either
slipped or became overbalanced and fell in front of the
car; that Lee Coleman was sitting by him and he heard
his halloo; that Coleman did not run down the track,
cross over it and get his foot fastened in the frog. This
witness and several others testified they heard Coleman
tell his mother after he was hurt that it was an acci-
dent and no one was to blame for it. The mother testi-
fied in rebuttal that her son made no such statement to
her.

George Murphy testified that at the boy's request
he walked back and picked up his hat about eight or ten
feet from the switch, and his pocketbook a few feet
further down toward the frog.

Alex. Mobley testified that James Coleman never
told him the boy's age; that he never hired
the boy from him nor asked his consent to hire

him; that the father never said to him that he did not want the boy to work on a train or about machinery; that he did not know the boy's age but supposed from his appearance and size that he was twenty-one years of age or over; that the boy was anxious to work on the train, said he wanted to learn that kind of work and that he put him on the train the morning he was hurt at his own request. The officers and agents of the company, who knew Emmett Coleman, all testified that they had no information about the boy's age, and made no inquiry about it but supposed from his size and appearance he was twenty-one years of age or over. The evidence shows that he was paid his wages by checks drawn in his favor by the company and that he indorsed and cashed them himself.

A diagram of the situation, which is admitted to be substantially correct, is contained in the record. This diagram shows that the side track which the train was on runs east and west; that it curves to the south and that the train was backing from east to west; that the only frog anywhere near the switch block is forty-six feet west of it and on the opposite side of the track.

The court gave the following instructions for the plaintiffs:

"1. The court instructs the jury that if they believe from the evidence that the death of Emmett Coleman was caused by his foot becoming fastened in an unblocked frog or guard rail, contributory negligence on his part will not excuse defendants from liability in this case.

"2. The court instructs you that the law does not exact of one who is a minor that caution and care it demands of adults, but the jury are at liberty, in considering the question of whether Emmett was negligent or careful, the fact that he was a boy and the maturity or immaturity of his judgment and discretion.

"3. The court instructs you that this is a suit for tort or wrong, and not a suit for services or wages, and

if you should find the issues for the plaintiff you may take into consideration and award them such judgment as in your opinion will compensate them for such wrong. You can also consider, in estimating said damage, their money loss occasioned by his death, but in no case can you give them more than they sue for.

"4. The court instructs you that if you believe from the evidence, Emmett Coleman was hired by his father to the defendant, through its agent, Alex Mobley, to work on section work, with or without directions as to employment on train work, and that thereafter said Emmett was put to work on a train without his parents' knowledge or consent, and that said train work was attended with perils and dangers not incident to the section work, that the act of Mobley was wrongful and Mobley's act was the act of his employer. If you believe from the evidence that he was authorized to employ, superintend and control said men under his employ, and if you so find, then the wrongful acts of Mobley became the wrongful acts of his employer, and if you believe from the evidence while so employed and while said Emmett was so engaged he was mortally wounded by the cars or engines running over him, from which he died, either through the carelessness of the engineer on engine or from his foot being caught in an unblocked frog, and that said Emmett was exercising care, then in such case the plaintiffs should recover such verdict as in your judgment will compensate for their injury, not exceeding amount sued for in the petition."

The following were given for defendant:

"3. The court instructs you that while it was the duty of the defendant to use reasonable care to guard against the probable evil result to employees from defective appliances, it was not required to guard against results or accidents that were unexpected or improbable.

"6. The court instructs you that it devolved upon the plaintiffs to establish their case by a preponderance

of the evidence, and unless they have done so in this case you should find for the defendants.

"8. The court instructs you that if you believe from the evidence that the defendant in this case was not guilty of any wanton or willful negligence resulting in the death of said Emmett Coleman, then in no event, even if you believe plaintiffs are entitled to recover, can they recover anything more than the actual probable damages by reason of the loss of his services during his minority."

The following were asked by defendant and refused:

"1. The court instructs you that upon all the evidence offered in this case that plaintiffs are not entitled to recover, and your verdict should be for the defendant.

"2. The court instructs you that the said Emmett Coleman, by accepting employment from the defendant to work as a brakeman or switchman on its train of cars, assumed all ordinary risks incident to the discharge of his duty, and all risks arising by reason of the acts or negligence of his fellow-servants.

"4. The court instructs you that the engineer in charge of the engine at the time of the injury and the said Emmett Coleman were fellow-servants, and if you believe from the evidence that the injury was caused by the negligence of said engineer in running the train at an improper time or too rapidly, or was otherwise negligent and thereby causing the injury and death of the said Coleman, then in such case it was the negligence of the fellow-servant, for which the defendant is not liable, and your verdict in that case should be for the defendant.

"5. The court instructs you that unless you believe from the evidence that the son of the plaintiffs, Emmett Coleman, did get his foot fast in the frog of the railroad and was by that reason struck, injured

and killed by defendant's train, then you should find for the defendant.

"7. The court instructs you that even if you should believe and find from the evidence in this case that the plaintiffs are entitled to recover, you should then only allow them compensatory damages, that is, such damages as you believe and find from the evidence, they have sustained by reason of the loss of their son's services, until he would have arrived at the age of twenty-one years."

The jury found for the plaintiffs in the sum of two thousand dollars. Motions for new trial and in arrest were filed and by the court overruled. Defendant appealed.

BLAND, P. J. (after stating the facts as above). —1. The death of plaintiffs' son alone did not constitute a cause of action against the defendant. His death, if caused by the negligence of defendant, would constitute a cause of action. The two things must concur and co-exist; death, and death caused by the negligence of the defendant, to entitle plaintiffs to recover. The cause of action, therefore, was the death caused by defendant's negligence. In both petitions the same death is relied on as one of the elements going to constitute the cause of action, and the negligence of defendant as causing the death is the other element. The only difference in the two petitions is in the allegations of the facts going to show the negligence of the defendant. There was, therefore, neither the substitution of another death or a new cause of death in the second petition. No change was made in the entire scope and purpose of the action by the amendment, and we think the amendment was permissible under our code system of practice. Ross v. Mineral Land Co., 162 Mo. 317; Lincoln v. Railway, 75 Mo. 27; Stewart & Jackson v. Van Horne, 91 Mo. App. 647; Bernard, Adm'r v. Mott, 89 Mo. App. 403.

2. It is not claimed by plaintiffs that the defendant is a railroad corporation owning or operating a railroad within the meaning of section 2873, R. S. 1899, and liable under that section for damages occasioned to one servant by the negligence of his fellow-servant. It is admitted by the defendant that the deceased was engaged in a hazardous employment at the time he was injured and that he was put to that work by Mobley, his boss. Plaintiff's evidence is that the deceased was under age; that he was hired with his father's consent to work as a section hand on the road under Mobley, but that Mobley was expressly forbidden by the father to put the boy to work on a train or in the mill. If this evidence be true, then the defendant, by its agent Mobley, was guilty of putting an inexperienced boy at a dangerous employment against the will and contrary to the express orders of his father, and there was no valid contract of hire for this particular work as between the plaintiffs and the defendant, and the relation of master and servant between the boy and the defendant was not created. In such circumstances the defendant would be liable for the death of the boy, unless it should be shown that his injury and death were the result of his own willful act. His negligence would not excuse the willful misconduct of the defendant in placing him in a place of danger against the express directions of his father. The fourth instruction given for plaintiffs substantially so declares the law and we think it was appropriate under this phase of the evidence. To meet this phase of the evidence, the defendant offered evidence tending to show that the father had emancipated the boy prior to the time he was hired by the defendant but the court excluded this evidence. We think this was error.

3. The first instruction given for the plaintiffs made it amenable to the penalty of section 1125, R. S. 1899, visited upon all companies and corporations operating any railroad that have failed to block all switches, frogs and guard rails on the road in all yards, divis-

ional and terminal stations, and where trains are made up, as required by section 1123, R. S. 1899. The evidence shows that the defendant had a section boss and a gang of section men working under him on the part of the road used by the defendant company. It is therefore reasonably inferable that its duty was to keep that portion of the road in a reasonably safe condition and to block frogs, etc., as required by section 1123, supra. But the instruction is broader than the statute. Whether or not the frog, where it is claimed Coleman got his foot caught, was within a yard or at a divisional and terminal station is not made clear by the abstract of the evidence furnished us; and if it was not admitted by the defendant that the frog was at one of these places, then it should have been submitted to the jury to find whether or not it was within the territory where the statute requires the company operating the road to block switches and frogs. This instruction also ignores another phase of the case. The uncontroverted evidence is that the boy in the performance of the duty he undertook (to throw the switch) was not required to go on the side of the track where the frog was situated; that the frog was forty-six feet west of the switch block and there was no necessity for him to go near the frog, therefore, if he did go to the frog and get his foot fastened in it, he did not do so in the performance of any duty required of him by the defendant. The act was of his own volition, not in the discharge of any duty enjoined on him by the defendant and the defendant is not liable for the resulting injury, unless intervening negligence is shown, on the part of the defendant, that directly contributed to the injury and resulting death, provided the boy sustained the relation of servant to defendant.

4. The second instruction for plaintiff is erroneous. It is not correct to say that the law does not exact of one who is a minor, that care and caution that it demands of an adult. A child of very tender years

is not chargeable with contributory negligence under any circumstances. A child not of tender years, say seven or eight years of age, is bound to use such care as children of his age, capacity and intelligence are capable of exercising. Perkin v. McMahon, 27 L. R. A. 206; Id. 154 Ill. 141. The care a minor is bound to use is that care that persons of his age, capacity and intelligence are capable of using in like circumstances. People of New York v. Andrews, 6 L. R. A. 128; Consolidated Traction Co. v. Scott, 33 L. R. A. 122. There is no arbitrary rule fixing the age when a youth may be declared wholly capable of understanding and avoiding danger. Barney v. Railway, 126 Mo. 372. Yet it seems to us that a youth eighteen years of age, of ordinary intelligence and experience, should show some incapacity in addition to his minority to warrant a court in directing, as a matter of law, that he was not required to use the same care as an adult.

5. It is contended by defendant that the instruction in respect to the measure of damages is erroneous. The assessment of the damages was left to the discretion of the jury. They were authorized to assess such damages as in their judgment would compensate plaintiffs for the loss of their son, not to exceed the sum of five thousand dollars. No rule by which to measure the damages is contained in this instruction. The action falls within the second section of the damage act (section 2865, R. S. 1899). The next succeeding section provides that the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just with respect to the "necessary injury" resulting from such death to the surviving party entitled to sue; also having reference to the mitigating or aggravating circumstances attending the wrongful act, neglect or default causing the death.

In Rains v. Railway, 71 Mo. 164, it is said: "The 'necessary injury' resulting to a parent from the negligent killing of his minor child within the meaning of

the third section of the damage act (R. S. 1899, sec. 2866), consists in the loss of services of the deceased during minority, the cost of nursing, surgical and medical attendance and appropriate funeral expenses." And if there were any aggravating circumstances attending thereon resulting in the death they should be pointed out to the jury and the jury should be restricted to those pointed out in assessing the damages. In Leahy v. Davis, 121 Mo. 227, the rule for the measurement of actual damages announced in the Rains case was approved and it was held that circumstance in aggravation of the wrong resulting in the death were elements authorizing the assessment of punitive damages. The rule was again approved in Stumbo v. Duluth Zinc Co., 75 S. W. 185 (Kansas City Court of Appeals). Tested by these authorities the instruction is erroneous in respect to the measure of damages.

For errors herein noted the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur.