ETHEL A. KOEHLER v. ROLLA WELLS, Receiver of United Railways Company of St. Louis, Appellant.—20 S. W. (2d) 31.

Division One, September 13, 1929.

*T. E. Francis* and *Vance J. Higgs* for appellant.

894

*Perry & Barker, George O. Durham* and *Forrest G. Ferris, Sr.*, for respondent.

ATWOOD, P. J.—This is an action for damages by the surviving widow of Charles R. Koehler who was fatally injured in a fall from the top of a street car, where as an employee of defendant (appellant herein) he was engaged in replacing a trolley pole. Plaintiff alleged that the fall was induced by an electrical shock received by her husband through the negligence of defendant. From a judgment in favor of plaintiff for ten thousand dollars defendant has appealed.

Plaintiff's petition contained several assignments of negligence. Defendant's answer was a general denial. The grounds of negligence submitted were: that defendant negligently failed to furnish Koehler with a reasonably safe place to work, in that at the time and place in question defendant negligently failed and omitted to provide any reasonably sufficient and proper method of shutting off the electricity from the trolley wire while the trolley pole was being replaced; that defendant adopted and directed a plan and method of performing the work of replacing trolley poles on cars in sheds while the trolley wires were charged with high and deadly currents of electricity, and that such plan and method was unsafe and dangerous and negligent, and that at the time and place in question said Koehler was working in accordance with said plan; and that with knowledge of such danger defendant negligently failed to furnish rubber gloves for the use of Koehler in said work.

Appellant's first assignment of error is that the trial court erred in failing to give defendant's instruction in the nature of a demurrer offered at the close of plaintiff's case and again at the close of the whole case. Since defendant did not stand on its demurrer at the close of plaintiff's case but went on and put in its own case, in passing on the court's action with reference to the final demurrer we will search all the testimony to see whether or not plaintiff's case was aided by defendant's proof. [Stauffer v. Railroad, 243 Mo. 305, 316.] In passing on a demurrer to the evidence the right doctrine is thus stated in Fritz v. Railroad, 243 Mo. 62, 77:

"Defendant's testimony, where contradicted, is taken as false; plaintiff's, whether contradicted or not, is taken as true; discrepancies, contradictions between witnesses or self-contradictions by witness, together with the credibility of the witness and the weight due his testimony, are for the jury, not the court. So, plaintiff is en-

titled to the grace of having allowed in his favor every inference springing reasonably on the proof.''

To the same effect are Williams v. Railroad, 257 Mo. 87, 111-112; Hunter v. Wethington, 205 Mo. 284, 293; and Gannon v. Gas Co., 145 Mo. 502, 517.

Counsel for appellant say that defendant's instruction in the nature of a demurrer offered at the close of plaintiff's case and again at the close of the whole case should have been given, for the reason that the evidence wholly failed to show that deceased's fall from the car was caused by his receiving an electrical shock due to the negligence of defendant.

In the light of the above precepts we do not think this contention is supported by the record. Plaintiff's husband was injured in the nighttime between twelve and one o'clock of March 26, 1923. He was immediately taken to a hospital where he died about twenty-four hours later. Oliver McCarthy, testifying for plaintiff said that when he visited Koehler at the hospital his right hand was bandaged, and later when he saw the body in the casket at the undertaking establishment the bandage had been removed and he observed a burn across the palm of deceased's right hand and through the skin ''about the size of a finger or end of a poker'' or about three-quarters of an inch wide and about a quarter of an inch deep, the inside of the wound having a dark color and the outer edges white ''like it had been washed real strong.'' This witness testified that he had seen another man with a hand burned from electricity and that this wound was a burn. Plaintiff testified that when her husband went to work the night he was injured there was nothing the matter with his hand but when she saw him in the hospital the next day he had a bandage on his hand. The motorman testified that when Koehler climbed on top of the car to replace the trolley pole he had no bandage on his hand, and the conductor who saw Koehler immediately before and after he fell from the car said there was no bandage on his hand. Koehler volunteered to replace the bent trolley, and it is not likely that he would have done so if such an open wound had existed on his right hand at that time. The conductor was the only eye witness to the fall. He testified that he was standing on the ground about fourteen feet from the east side of the car, which was on a switch track just outside the entrance of one of defendant's car sheds, while Koehler was on top of the car replacing an old bent trolley pole with a new one; that he saw Koehler place the new pole in the socket on top of the car and he ''was stooped over tightening it up;'' that he was standing up, stooped over, working, with his face to the west, and ''all at once he just fell off backwards.'' On cross-examination he said that Koehler did not straighten up after he was stooping down ''and sort of come in contact with this trolley wire.''

After the fall a wrench, such as was generally used in work of this kind, was found on top of the car where Koehler was last seen at work. One bolt was found tightened in the socket and the other lacked a few turns of being tight. One witness, testifying for plaintiff, said that the effect of an electrical shock on a man was "to draw him up" and "if he is in a place where it can knock him, throw him to either side or throw him down." Defendant's superintendent of power, testifying for defendant, said that he had been shocked with six hundred volts of electricity (the evidence was that this trolley wire carried 550 volts) and the effect "is just like somebody takes you and gives you a terrible blow;" that an electric shock severe enough to burn a man's hand is severe enough to cause him to stumble or fall and would "jolt him pretty hard." The foreman of one of defendant's repair shops, testifying in defendant's behalf, said that a man could hardly get a burn from an electric wire without getting a shock and that "if he got a burn he undoubtedly must have had a ground some way."

Counsel for appellant say that even if there was a burn in the palm of the right hand the evidence falls short of proving that Koehler received an electrical shock because there was no evidence of a corresponding burn on any other part of the body. The deputy coroner who examined the body of the deceased, testifying for defendant from his notes made at the autopsy, said that underneath the left arm about half-way between the elbow and shoulder he found an elliptical burn about three inches by one inch "where the outer skin had peeled as though burned with a hot-water bottle." The jury, of course, was not bound by the mere opinion of the witness as to the cause of the burn. Counsel for appellant also say that the above facts and circumstances should be held for naught, because there is no evidence that the deceased could have received an electrical shock under the facts proved. We do not think the record warrants such a conclusion. According to the evidence the trolley wire, trolley pole and trolley socket were not insulated. There was testimony that if a man on the roof of the car stepped on a grounded metallic circuit and touched a live wire he would receive a shock. The evidence showed that in and through the roof of the car was an iron ventilator, metal bolts and screws, and inside the car were light wires and iron bolts going up the sides of the car from the bed, and the light wires were run through grounded metal conduits extending up into the roof of the car close to the running boards, which were fastened to the top of the car with metal screws. There was also testimony that if while the lights were on (and there was evidence that they were on when Koehler fell) one should touch both pole and wire and at the same time there was no direct contact between the trolley pole and the trolley wire he would receive a shock. The evidence was

conflicting as to whether immediately after Koehler's fall the wheel of the trolley pole was against the trolley wire or the trolley pole was "standing straight up in the air." The deceased was above six feet in height. He was standing stooped over beneath the trolley wire which was variously estimated to be three and one-half to four and one-half feet above the top of the car. He could easily have come in contact with this highly charged wire without straightening his body. Such body-contact with the wire and break of contact between the trolley pole and trolley wire would probably not be observable by the conductor standing on the ground below, and the manner of Koehler's fall was consistent with the proved effect of an electrical shock. There was substantial evidence that his body showed burns, and from all the facts and circumstances in evidence the jury would have been justified in concluding, without "piling inference upon inference," that these were electrical burns inflicted while Koehler was tightening the trolley pole in its socket on top of the car in close proximity to the highly charged trolley wire. There was sufficient evidence to go to the jury on the charges of negligence submitted, and the jury were properly instructed as to the respective theories of plaintiff and defendant relative thereto. Defendant's instruction in the nature of a demurrer to the evidence was properly refused.

Appellant's next assignment of error is that the court erred in permitting witness Zykan to testify that deceased could have received an electrical shock under the following circumstances:

"(1)  That a person could receive a shock from a span wire if it were not insulated (but there was no proof that any span wire was uninsulated).

"(2)  That a person could have received a shock if there had been a leaky insulator on the span wire and if he had touched the trolley or the span wire (but there was no proof that there was a leaky insulator or that deceased touched the trolley or span wire).

"(3)  That if a person stood on a metallic substance on the roof of the car, which was connected to the ground, and at the same time touched a charged wire he would get a shock (but there was not any proof that there was any metallic substance on top of the car connected with the ground)."

As to the circumstances first above noted defendant did not object upon the ground here raised. The record does not show any exception saved as to the circumstances next above mentioned. As to the circumstances last above mentioned defendant did not object on the ground here raised. It further appears that counsel for defendant earlier in the examination invited and acquiesced in this character of testimony. The assignment of error is overruled.

Appellant's remaining assignment of error urged is that the court erred in giving instruction numbered 8 "in that it authorized the jury to award plaintiff damages instead of assessing a penalty." The instruction is as follows: "The court instructs the jury that if you find in favor of the plaintiff you will, in assessing her damages, award her such sum, not exceeding ten thousand dollars, as you find from the evidence will fairly and justly compensate her for all, if any, pecuniary loss you find from the evidence she has sustained, or will sustain, as a necessary result of the death of her husband, Charles R. Koehler."

The objection is made on the theory that the action is one under Section 4217, Revised Statutes 1919. Such assumption, however, is erroneous because this section applies only to persons who "shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, *whilst running, conducting* or *managing* any locomotive, car or train of cars, or any street electric or terminal car or train of cars," etc. (italics ours), while the pleadings and evidence herein show that the car in question was standing on a switch track near the entrance of the car shed undergoing repairs at the time plaintiff's husband was injured. The action obviously comes within the terms of Section 4218, Revised Statutes 1919, under which Instruction 8 was properly given. This assignment of error is likewise overruled.

For the reasons above stated the judgment is affirmed. All concur.