LYDE H. HERTZ, Executrix, Respondent, v. WALLACE G. MCDOWELL, CLARA M. MCDOWELL, and EDWARD B. DAUGHERTY, doing business as MCDOWELL TIRE COMPANY, and GEORGE HOWARD BROWN, Appellants.—No. 40698.—214 S. W. (2d) 546.

Court en Banc, November 8, 1948.

*Henry W. Buck, W. H. Hoffstot* and *Morrison, Nugent, Berger, Hecker & Buck* for appellants.

*Albert L. Reeves, Jr., Henry I. Eager, Kenneth E. Midgley,* and *Blackmar, Newkirk, Eager, Swanson & Midgley* for respondent.

[547] VAN OSDOL, C.—Lyde H. Hertz instituted this action as executrix of the will of her son Alfred W. Hertz for his wrongful death. Sections 3653 and 3654 R. S. 1939, Mo. R. S. A. Alfred W. Hertz, a bachelor 62 years old, died as a result of injuries sustained at the intersection of 12th and Walnut Streets, Kansas City, when he was struck by a truck owned by defendants-appellants, McDowell and Daugherty, and driven by their employee, defendant-appellant Brown. The jury returned a verdict for the executrix, awarding $7000 damages. The defendants appealed to the Kansas City Court of Appeals, seeking the reversal of the ensuing judgment on the assigned grounds the trial court had committed errors in giving and refusal of instructions, which errors, defendants-appellants contended, resulted in an award of excessive damages. The Kansas City Court of Appeals affirmed the judgment (203 S. W. 2d 500); however, upon dissent of Cave, P. J., the case was transferred to this court

where we may finally determine the cause as if here on original appeal. Section 10, Article V, Constitution of Missouri, 1945.

The original plaintiff, Lyde H. Hertz, executrix, a widow, mother of deceased, died January 14, 1948, and by order of this court the administrator de bonis non with the will [548] annexed of the estate of deceased, Alfred W. Hertz, has been substituted as party plaintiff-respondent.

The administrator will be hereinafter referred to as "plaintiff," and defendants-appellants as "defendants."

It will be unnecessary to here fully restate the evidence which has been fully, fairly and accurately stated in the opinion of the Kansas City Court of Appeals, although we will make some references to the evidence in connection with our rulings upon the contentions of the parties.

█ Defendants assert plaintiff's Instruction B on the measure of damages was erroneous. It is contended the instruction (a) failed to include advice to the jury on the issue of the mother's life expectancy and (b) was erroneous in submitting circumstances of aggravation. The instruction reads as follows,

"The court instructs the jury if your verdict is for plaintiff then in fixing the damages you will take into consideration the age of deceased's mother and any pecuniary loss which you believe from the evidence she sustained as a direct result of the death of her son, and in fixing the damages, you may take into consideration the mitigating and aggravating circumstances, if any, attendant upon the fatal injuring of deceased and your verdict if for plaintiff will be in such sum as a whole stated in one lump sum as you believe from the evidence will represent fair and reasonable compensation for the aforesubmitted pecuniary loss so sustained, but your verdict may not exceed $10,000.00.

"The court mentions this amount solely because such is the maximum recovery in a death action and because such is the amount sued for."

(a) Defendants emphasize the facts that the mother at the time of her son's death was 89 years old and, according to the American Experience Table of Mortality (see Section 5968 R. S. 1879) introduced into evidence by defendants, the mother had an "expectation of life" of but 1.69 years, and of but 1.42 at the age of 90 when the cause was tried. Defendants say the mother's life expectancy was the "vital issue," and the jury should have been specifically instructed on the "issue."

In the case of McCord v. Schaff, 279 Mo. 558, 216 S. W. 320, (action under Federal Employers' Liability Act), cited by defendants, an instruction authorized the jury to take into consideration the age of deceased and did not in anywise advise the jury to take

into consideration the life expectancy of the deceased's parent, plaintiff. The instruction was erroneous. The life expectancy of plaintiff was much less than that of deceased, and it, therefore, became vital to a just verdict that the damages to be assessed should be based upon the life expectancy of plaintiff who, in the course of nature, would die first. Of like import are the cases of Heath v. Salisbury Home Tel. Co., Mo. App., 27 S. W. 2d 31 (the mother's life expectancy might be less than the years of the minority of deceased); Mayberry v. Iron Mountain Co., 211 Mo. App. 610, 249 S. W. 161 (the life expectancy of the father and mother was less than that of their son); Stevens v. Kansas City Light & Power Co., 200 Mo. App. 651, 208 S. W. 630 (the life expectancy of the one, plaintiff widow or deceased husband, who would sooner die should control). In Stottle v. Chicago R. I. & P. R. Co., 321 Mo. 1190, 18 S. W. 2d 433 (action for violation of the Federal Safety Appliance Act) the deceased was 27 years old at the time of his death and his wife was 23; the given instruction was apparently correct—the instruction was plainly based on the life expectancy of the husband, the shorter life, "and this is the general rule." Where the injury to plaintiff is because of wrongful death of a minor, it has been said the jury ought to measure the necessary injury to the parent-plaintiff by the value of the child to the parent during the child's minority. Parsons v. Missouri Pac. R. Co., 94 Mo. 286, 6 S. W. 464; Coleman v. Himmelberger-Harrison Land & Lumber Co., 105 Mo. App. 254, 79 S. W. 981. In the case at bar the Instruction B authorized the jury to take into consideration the age of the mother, and the instruction contained no language susceptible of a misleading construction that the computation of the amount of the award [549] should be governed by the age of the son who, in the course of nature, would have lived the longer. But it is obvious, as defendants say, the instruction did not give the jury specific advice as to the "expectation of life" of the mother.

Instructions (on the measure of damages under the compensatory sections of the wrongful death statute) have been approved which have neither limited or detailed the elements of damages, nor directed the jury in the manner of estimating the damages further than to limit the plaintiff's recovery to the *fair and just compensation for the pecuniary loss* which has or would be sustained as a necessary result of the wrongful death. These general measure of damages instructions, in effect, follow the language of the standard fixed by the Section 3654, supra. See Steger v. Meehan, Mo. Sup., 63 S. W. 2d 109; Koehler v. Wells, 323 Mo. 892, 20 S. W. 2d 31; Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S. W. 831. See also Menard v. Goltra, 328 Mo. 368, 40 S. W. 2d 1053 (wrongful death statute of Illinois). It seems that, when the measure of damages is submitted generally but in effect according to the standard

fixed by the statute, the defendant should request if he desires instructions further limiting or detailing the elements of plaintiff's damages or directing the jury how to estimate them. Steger v. Meehan, supra; Morton v. Southwestern Telegraph & Telephone Co., supra. And see Crabtree v. Kurn, 351 Mo. 628, 173 S. W. 2d 851 (action based on violation of Federal Safety Appliance Act). The given Instruction B (aside from the submission of circumstances of aggravation of which we will treat infra) limits the recovery to the fair and reasonable compensation for the pecuniary loss the mother sustained as a direct result of the death of her son.

Defendants concede they would have stood "foreclosed (as to the instant contention) as did the defendants" in the Steger, Morton and Crabtree cases, supra, had they requested no instruction as defendants' refused Instruction 2; and defendants assign error in the refusal of that instruction, which reads as follows,

"The court instructs the jury that the plaintiff in this case, Lyde H. Hertz, received some support from Alfred W. Hertz during his lifetime, and that the basis of her right of recovery, if any, is predicated upon the fact that the deceased would have continued to furnish some support to her until the time of her death. You are further instructed that plaintiff is at this time ninety years of age and that in considering the amount you will allow her as damages, if any, you may take into consideration the life expectancy of 1.42 years of a woman ninety years of age, as given in the American Experience Table of Mortality, together with the state of her health and other facts and circumstances from which you can judge the length of time said plaintiff may live. You are further instructed that in computing the amount of recovery, if any, you shall be governed by the amount of money the deceased actually contributed to the support and maintenance of the plaintiff during his life, and the amount he would have contributed to her support and maintenance had he lived."

We believe the refused Instruction No. 2 might be subject to criticism in emphasizing the "expectation of life" as shown in the American Experience Table of Mortality without in any appropriate way advising the jury they were the judges of the Table's evidentiary value when considered in connection with the other circumstances hypothesized which might have tended to add to or detract from its weight and value. See Annotation 87 A. L. R. 910, pages 915-916; 19 R. C. L., Mortality Tables, Sec. 13, p. 224; Stevens v. Kansas City Light & Power Co., supra. And in our opinion the giving of the instruction would have been prejudicially erroneous in at least one respect, that is, in advising the jury that, in computing the amount of recovery, they should be governed by the *amount of money* the son had actually contributed during his life and would have contributed had he lived. The pecuniary loss as contemplated by the statute was

not to be limited, in the instant case, to the recovery of the "amount of money" the deceased would have contributed had he lived. There was evidence introduced tending to show deceased in his lifetime resided in the home of the mother and, in addition to his contributions "of money" to his mother, did [550] tasks and rendered services (more fully described infra) in and about the home, such as an adult son and the man of the family household might do. The pecuniary loss for which damages may be recovered by a parent for the wrongful death of an adult child is not in all cases limited to the money which would have been contributed to the parent by the child had the child lived. The loss may consist of the various elements of pecuniary value that enter into the domestic relation of parent and child, living in one family, or otherwise. In such cases the aim of the law is to repair in a pecuniary way the loss sustained by the parent. 8 R. C. L., Death, § 115, p. 840. And see 16 Am. Jur., Death, § 182, pp. 122-123; Talbert v. Chicago, R. I. & P. R. Co., 321 Mo. 1080, 15 S. W. 2d 762; Bolino v. Illinois Terminal R. Co., 355 Mo. 1236, 200 S. W. 2d 352 (action under Federal Employers' Liability Act).

The proffered instruction being erroneous, the trial court did not err in refusing it. A requested instruction must be correct or the court may refuse it without committing reversible error; and when erroneous instructions are requested the trial court is under no duty to correct or modify them in any way. Schipper v. Brashear Truck Co., Mo. Sup., 132 S. W. 2d 993; Vol. I, Raymond, Missouri Instructions to Juries, § 1, p. 2.

The legislative intent as expressed by Sections 3653 and 3654, supra, is to give the jury a broad discretion in computing damages for wrongful death, within the limit prescribed, based upon the *pecuniary loss* of every kind and character which, under all the circumstances of the particular case, would necessarily result from the death, to those entitled to recover (and the jury, in a proper case, may also diminish or increase the amount because of circumstances which they may find in mitigation or aggravation of the wrongful act, neglect, or default which caused the death). Steger v. Meehan, supra; Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. 2d 115.

Attending the contention of error (b) in authorizing the jury to consider circumstances of aggravation—we believe the submission was proper. The plaintiff had alleged specific negligent acts of defendants were performed recklessly and with indifference to the rights of deceased. The plaintiff's principal instruction hypothesized the "reckless disregard of the rights and safety of deceased and the public" in the conjunctive with hypothesized negligent acts of defendants, which hypotheses were supported by evidence tending to show that about 4:45 in the afternoon of the fatal injury—the weather

was "nice, sunshiny"—the truck, approaching (from the east on 12th Street) the busy intersection of 12th and Walnut in downtown Kansas City, was being driven at a rate of speed of 20 or 30 miles per hour, it was "Easter time and the streets were crowded"; that the deceased was struck by the truck and his body thrown 12½ feet from the point of impact; that the truck, moving downgrade, had approached and entered the intersection against the red traffic light; and that the defendant driver had observed that deceased (a pedestrian, who, with others, was walking with the green traffic light) did not see the truck coming. The defendant driver did not sound any warning, nor did he attempt to use his emergency brake. "There was absolutely no brakes (foot or emergency)" immediately after the casualty.

It is true the defendant driver testified; and there was other evidence introduced tending to show the hydraulic foot brake on the truck had suddenly "gone out on him," but there was also evidence tending to show that the deterioration of the foot-braking apparatus was such as would occur over a period of time from wear and tear whereby the brake pressure gives out gradually. A witness said the gradual giving out would be indicated by a pedal "that faded out." In explaining the reason for failing to use the emergency brake defendant driver testified he was trying to get the truck "in gear, to put it in reverse . . . If the foot brake wouldn't hold I knew the emergency brake wouldn't hold." But an expert witness testified the emergency brake was purely mechanical and the failure of the hydraulic foot-braking system would have nothing to do with the emergency brake. There was also evidence [551] tending to show there was no effective horn or warning device on the truck.

We hold the trial court did not err in submitting the circumstances of aggravation. The evidence, considered from a standpoint most favorable to plaintiff, was, we believe, sufficient to justify the finding that the submitted negligent acts were attended by such circumstances as to evince a reckless disregard for the rights of others and a want of care indicatory of indifference to consequences. Spalding v. Robertson, 357 Mo. 37, 206 S. W. 2d 517; Marlow v. Nafziger Baking Co., supra; Adams v. Thompson, Mo. App., 178 S. W. 2d 779.

As stated supra, the defendants' contention of excessiveness of damages was urged as being due to the (assigned) errors in the giving and refusal of instructions; nevertheless, although we have ruled against defendants' contentions of error in instructing the jury, we will examine the evidence pertinent to the contention of excessiveness of award. As has been said, the jury may exercise a broad discretion in computing damages for wrongful death. The jury's discretion must not be exercised arbitrarily—the amount of

the jury's award must be justified by the evidence. But the jury's exercise of discretion will not be interfered with, unless it has been clearly abused.

The evidence showed deceased's mother became 90 years old March 28, 1946. About twenty-five years ago she sustained a broken hip, and had accidentally fallen on two subsequent ocasions. She could not walk at all. She had not had a doctor for anything except her leg for many, many years, and had suffered no colds for about three years. She could read a newspaper with "large enough print." She had no diffifficulty with her hearing; and had all her original teeth with but two small fillings. Physicians were of the opinion her leg injury "has not affected her general condition," her health was "better than the average" for people of that age. She had no organic disease or infection. The shown fact that she was obliged to take a sedative because of pain in her leg and hip was not considered by a physician to affect her longevity in any way.

The son Alfred lived with his mother in the family residence which she owned. Alfred was an architect. He gave her "on the average" the sum of $125 in cash and checks per month, which money she used for household expenses and to employ a maid. "He paid all the utilities; he paid for new awnings for the house, and whenever anything was necessary, like painting, he either did that or paid for it being done. He practically supported me. . . . He would stop down town and buy me something, a pair of stockings if I needed them, or groceries at Wolferman's, many times they had groceries and fruits that were very nice, and he would stop and bring some home with him . . . he did everything that any gentleman of the house does, mended all the little things. If a screen was out he fixed it and put it back in, and he raked the lawn, mowed the grass . . . many things he did."

When the cause was tried it could not be certainly said the mother was approaching death, or that her life would be limited to any particularly brief period of time; and it is clear there was substantial evidence the son rendered filial help and services to his invalid mother of very substantial pecuniary worth additionally to the contribution of money and of articles and supplies in kind. And we have seen the damages for the loss of these pecuniary benefits (properly ascertainable from and after the date of the son's death) could be increased by the jury in the exercise of their discretion because of the submitted circumstances in aggravation attending the negligent acts of defendant. See again Marlow v. Nafziger Baking Co., supra. Viewing the evidence pertinent to the question of excessiveness of award from the viewpoint most favorable to plaintiff, we believe an

appellate court should not interfere with the jury's award in the instant action.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court en Banc. All concur.