**Frieada PFEFER, Respondent,**

v.

**Burnie BACHMAN et al., Appellants.**

**No. 24052.**

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 1, 1965.

Application to Transfer Denied March 8, 1965.

Moss H. Silverforb, Kansas City, for appellants.

Sol M. Yarowsky, Kansas City, for respondent.

HUNTER, Judge.

Plaintiff-respondent, Frieda Pfefer, brought suit against defendants-appellants, Burnie Bachman and Margaret Bachman, husband and wife, for $7,300 for money had and received by way of various unpaid loans made to them by plaintiff. These loans were described in the petition as follows (To Margaret Bachman): January 30, 1954, the sum of $2,500; February 1, 1954, the sum of $1,000; May 5, 1954, the sum of $800; (To Burnie Bachman): March 9, 1954, the sum of $3,000; April 7, 1954, the sum of $300, and on May 5, 1954, the sum of $700 for a total of $8,300.00. Plaintiff alleged that on June 18, 1956, she received from Margaret Bachman a $1,-000 payment on the loans, leaving a balance due from both defendants of $7,300.00 which defendants upon demand refused to pay.

The answer was a general denial coupled with defendants' statement that it was Nesbitt Grapette Bottling Co. (and not defendants) that paid plaintiff the mentioned $1,000, and defendants' allegation that if defendants owed anything the debt was "outlawed by the Statute of Limitations".

At the trial which commenced on November 21, 1963, plaintiff testified in support of the allegations contained in her petition. The gist of her testimony is that she and her husband first met the Bachmans in 1949 and they quickly became friends. In January 1954 the Bachmans came to them stating they were very hard up and they needed money. "Well, they didn't have anything to eat, in fact, I bought them clothes and gave them plenty of food * * *." The Bachmans told Mrs. Pfefer they needed $2,500. She made out a check dated January 30, 1954, in that sum to Mrs. Burnie Bachman, as payee. At Mr. Bachman's request, according to Mrs. Pfefer, she noted on the bottom of the check, "For loan for Nesbitt Grapette Co." Bachman told her he wanted the Nesbitt Grapette Company to pay for it.

Two or three days later Mrs. Bachman again contacted Mrs. Pfefer seeking more money. Mrs. Pfefer gave Mrs. Bachman her personal check dated February 1, 1954, in the sum of $1,000. This check named "Mrs. Burnie Bachman" as payee, and contained the notation "For a loan". On March 9, 1954, Mrs. Bachman again contacted Mrs. Pfefer saying she needed additional money. In response, Mrs. Pfefer gave to Mr. Bachman her check for $3,000 made payable to "Nesbitt Grapette Co." per Mr. Bachman's request. This check contained the notation "For loan". Mrs. Pfefer testified the check represented a loan to the Bachmans and was not a loan to the Nesbitt Grapette Co., nor was it to purchase stock.

On April 7, 1954, the Bachmans told Mrs. Pfefer they were going to sell their home and needed to buy a lot to build another home on. They asked her to lend them the money to make the down payment on the lot for them. She stated she did so by giving her check in the sum of $300, payable to J. Lester Brown, a real estate man.

On May 5, 1954, at Mrs. Bachman's request, Mrs. Pfefer gave a $700 check to Mr. Bachman who had her insert in it as payee "Nesbitt Grapette Bottling Co." This check also contained the notation "For personal loan". Also on May 5, 1954, Mrs. Pfefer gave her check in the sum of $800, payable to Mrs. Bachman, and containing the notation "For personal loan".

The Bachmans continued to request loans from Mrs. Pfefer but she had no available money until about May 5, 1954, when the Bachmans told her they were going to lose their home because they couldn't make the payments due on it. She aided them in working out temporary financing until they sold the house. On June 18, 1954, according to Mrs. Pfefer, the Bachmans paid her $1,000 on what they owed her.

Thus it was Mrs. Pfefer's specific testimony that all these transactions were personal loans she made to the Bachmans. She denied any of them were loans *by her* to the Nesbitt Grapette Co., now bankrupt, or to purchase stock for her in that company. She testified she had never either purchased or received any stock of the Nesbitt Grapette Company, was not familiar with the business affairs of that company, and had no interest in it. Her only dealings were with the Bachmans, who as her friends, solicited and obtained the mentioned personal loans from her. What they actually did with the money they borrowed from her she did not know. Mrs. Pfefer's explanation of her delay in bringing suit against the Bachmans was that they kept assuring her they would soon be paying her all that they owed her.

The gist of the evidence on behalf of the defendants, including some exhibits adduced on their behalf, was that the mentioned checks all represented either investments by Mrs. Pfefer in the Nesbitt Grapette Co., which made her a creditor of that company or purchaser of stock by her in that company. Mrs. Bachman did not testify. Her husband stated that he, his wife, and several others who were the principal stockholders in the Nesbitt Grapette Co. in order to keep that company

from going under advanced some of their own money to the company so it could meet some of its debts. He denied that he or his wife had ever borrowed any money from Mrs. Pfefer. He denied that he borrowed any money from Mrs. Pfefer and then turned that money over to the bottling company to keep it going. "I couldn't have owed her anything. I never borrowed anything from her individually. What monies that I carried as a messenger and she told me to turn it over to the corporation, was turned over to them and that is all. I have never borrowed anything from her." He stated that if a check was made out to his wife, she cashed it and brought the money to the company. He had told Mrs. Pfefer the company was in distress and needed more capital and "they was going to bring some more people in and reorganize the stock * * * she said she would help out, she would buy some stock in this company." He stated they arranged with Mrs. Pfefer that she was to put up $8,000 for 123 shares of stock actually then worth $12,300.00 and that she was to get this stock when the $8,000 was fully paid. Mr. Bachman admitted these 123 shares of stock were at that very time held in escrow for another creditor of the company. Bachman also testified that he personally was in bankruptcy around 1954–1955. Among the exhibits introduced by defendants was a bank money order purchased by Mrs. Bachman dated June 18, 1956, payable to Mrs. Pfefer in the sum of $1,000, containing the notation "payment of Nesbitt Grapette Bottling Co., Inc., account".

The jury returned its verdict in favor of Mrs. Pfefer in the sum of $4,300. After an unavailing motion for new trial, this appeal followed.

The Bachmans contend seven errors (points) necessitating a new trial were committed by the trial court. We quote four which can be grouped for discussion: "Point I. The verdict is defective. It must be responsive to all the material issues. Point III—Respondent's evidence failed to make a case against appellants. Point IV—The evidence on the part of the respondent does not substantiate the verdict. Point V—The verdict is inconsistent, contradictory, illogical and bad upon its face, and will not support a verdict. B—The verdict must be clear and certain and responsive to all material issues."

Supreme Court Rule 71.02, V.A.M. R. provides that in every action for the recovery of money only, the jury shall render a general verdict. Supreme Court Rule 71.06 provides, "When a verdict shall be found for the plaintiff in an action for the recovery of money only, the jury shall also assess the amount of the recovery * * *." Our examination of the verdict reveals it is a general verdict in the usual form. It found the submitted issues in favor of plaintiff and against the defendants and assessed the amount of recovery. It is responsive to all the material issues and is not inconsistent, contradictory or illogical. It is free of ambiguity and requires no construction, correction or amendment. See, Thorne v. Thorne, Mo.Sup., 350 S.W. 2d 754.

Additionally, the verdict is based on substantial evidence, the gist of which we have previously related. Mrs. Pfefer's own testimony is sufficient to make a submissible case of money had and received as pleaded in her petition.

While defendants' testimony and some of defendants' exhibits supported defendants' views, the jury must be presumed to have based its verdict on all the evidence including that of plaintiff, and it is not limited in its consideration to any particular exhibit or testimony. Conflicts or contradictions in the evidence generally present questions of fact for the jury, under proper instructions, and not questions of law for the court. It is the peculiar province of the jury to judge the credibility of the witnesses and the weight and value to be given to the conflicting evidence.

The Bachmans contend the verdict either must be for $7,300 for Mrs. Pfefer or be for the Bachmans. We do not agree with this contention. Mrs. Pfefer sued for $7,300 and had the burden of proof thereon. The jury on the record before us could have believed she carried the burden of proof only to the extent of $4,300. Only three of the checks signed by Mrs. Pfefer were made out to Mrs. Bachman as payee. These three checks in the amounts of $2,500, $1,000 and $800 total $4,300, the exact amount of the verdict. We find no merit in Points I, III, IV and V.

The Bachmans' Point II is that respondent's suit for recovery is barred by the Statute of Limitations. Although the Bachmans pleaded this defense in their answer, at the trial they did not offer any instruction on it and they thereby abandoned the defense. See, Shepard v. Harris, Mo.Sup., 329 S.W.2d 1; National Bank of Commerce in St. Louis v. Laughlin, 305 Mo. 8, 264 S.W. 706.

Point VI charges error on the part of the trial court in the admission of evidence. The particular evidence referred to in appellants' brief concerns two questions asked by Mrs. Pfefer's counsel on cross-examination of Mr. Stolov, one of the Bachmans' witnesses and a stockholder in the Nesbitt Grapette Co. "Q. By, the way, were you connected with Mr. Bachman in his ill-fated venture, the C. and B. Plumbing operation? A. No, sir. MR. SILVERFORB: Just a minute, I object to that and ask the jury be instructed to disregard it. It has no bearing upon the issues here involved. MR. YAROWSKY: If the Court please, I would like to show bias and prejudice of this witness and the inclination to testify outrageously in behalf of the defendant. THE COURT: The objection is overruled." We are not persuaded that the trial court abused its discretion in permitting the question and answer to stand as material to the issue of possible bias of the witness. Nor in view of the answer can we see how any prejudice to the Bachmans could have resulted therefrom.

A witness's interest or bias are relevant matters, and the extent thereof may ordinarily be shown, although much discretion is accorded to the trial court as to how far the inquiry may go in details. State v. Pigques, Mo.Sup., 310 S.W.2d 942; Bean v. Ross Mfg. Co., Mo.Sup., 344 S.W.2d 18; and see cases collected in Mo. Digest Witnesses, 

The second question objected to was, "Q. Now is that a par value you are speaking of, or is that the intrinsic value or worth of the share?" Although the trial court overruled the objection the witness never answered the question. We find no merit in Point VI.

The final contention of error is that the trial court erred in refusing to give Instruction No. 6 offered by the appellants. The Bachmans assert that Instruction No. 3, given at their request, was but a part of their defense and that offered Instruction No. 6 was still another part of that defense. Instruction No. 6 is repetitious of Instruction No. 3 in several aspects. Its new matter concerns the $1,000 payment on June 18, 1956, to Mrs. Pfefer and directs the jury that if that payment was made from funds of the Nesbitt Grapette Bottling Co. by defendants as agents of that company "on account of Nesbitt Grapette Bottling Co. then your verdict must be in favor of defendants and against plaintiff." The instruction goes too far. The payment of $1,000 under the circumstances stated in the instruction would not necessarily defeat Mrs. Pfefer's total claim. Thus, in addition to being repetitious and somewhat unclear, the instruction is not a correct statement of the law and the trial court did not err in refusing to give it. Hertz v. McDowell, En Banc, 358 Mo. 383, 214 S.W.2d 547(7); McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W.2d 907 (4–5); Schipper v. Brashear

Truck Co., Mo.Sup., 132 S.W.2d 993 (9–10), 125 A.L.R. 674.

Having examined all of appellants' contentions of error and having found none, we affirm the judgment.

All concur.