Winston WALLER, Administrator of the Estate of Minnie Waller Helling, Deceased, Appellant,

v.

Philip Edward OLIVER, Respondent.
Frank Waller, Defendant.

No. 45653.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Opinion Modified on Court's Own Motion and Rehearing Denied Dec. 10, 1956.

---

Alexander M. Goodman and Sherman Landau, St. Louis, for appellants.

Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter, St. Louis, Paul E. Fitzsimmons, Clayton, of counsel, for respondents.

COIL, Commissioner.

Winston Waller, plaintiff below, as the administrator of the estate of Minnie Waller Helling, deceased, sought $15,000 for her wrongful death. Defendants below were Frank Waller and Philip Edward

Oliver, present respondent. The trial court directed a verdict for Frank Waller and no complaint is here made of that action. The jury returned a verdict in favor of the administrator and against defendant Oliver in the sum of $2,000. Plaintiff has appealed from the ensuing judgment, asserting that the trial court erred in failing to reprimand defendant's counsel for improper jury argument, in excluding from evidence the original answer of defendant Oliver, in permitting defendant's counsel to draw an unfavorable inference from the prosecution of the action, and in refusing plaintiff's instruction B. Plaintiff also contends that the judgment is grossly inadequate.

On October 8, 1954, a clear, dry day, Frank B. Waller drove his Ford pick-up truck south on black-topped Missouri Highway 21. His former wife, Minnie Helling, was a front-seat passenger. As he ascended a right curve, defendant Oliver, driving northwardly, apparently lost control of his automobile, careened onto Waller's side of the road, and collided head on with the Ford truck. The collision was violent and Minnie Helling sustained injuries from which she died the next morning. At the trial there was no contested issue as to the liability of defendant Oliver for the collision. The controversy between plaintiff and defendant Oliver was solely as to the amount of damages. Mrs. Helling died intestate and left surviving four children, three daughters and one son, none of whom was a minor and each of whom was married.

The evidence showed that deceased's children had paid the sum of $1,552.46 for hospital, medical, and funeral expenses. Defendant's counsel argued to the jury that they should be recompensed for that amount "and for any other additional sum you think they have really lost, if any, by reason of the death of their mother." In attacking the testimony of the children who had testified to the pecuniary loss they claimed by reason of their mother's death, to which we shall refer in some detail later in this opinion, counsel argued in effect that all of their testimony justified the conclusion that they were attempting in the instant action to obtain money which they did not deserve because they had not suffered the pecuniary losses they claimed and were also attempting to cause the jury to assess additional damages in order to punish defendant Oliver. Near the end of counsel's argument, the record shows the following: "It is hard to watch a further effort to make—to inject an element of punishment—blood money, if you will—against this gentleman, who has suffered enough on account of the accident. As far as that is concerned, if there is any punishment concerned, he suffered it.

"Mr. Landau: Just a minute. I object to that characterization, if the Court please. I ask that the jury be instructed to disregard it. It is an inflammatory statement.

"The Court: I have instructed the jury in my charge here that arguments of counsel are for the purpose of aiding you ladies and gentlemen in reaching a proper verdict here. Anything that the lawyers say outside of that you may exclude it. Proceed, gentlemen.

"(Thereupon the following discussion was had between the Court and counsel out of the hearing of the jury at the judge's bench): Mr. Landau: I particularly object to the use of the phrase 'blood money' that these people are trying to get—'blood money'.

"The Court: All right.

"Mr. Landau: And I request that the jury be instructed to disregard that and I request that counsel be reprimanded for the use of the phrase.

"Before the Jury. The Court: Members of the jury, in counsel's argument, he referred to blood money. In your deliberations you are instructed to disregard that.

"Mr. Carter: I apologize to the Court, and apologize to Mr. Landau if I used an expression which I should not have used, and I want you to forget about it. All I

want you to do is when you go back to your jury room to figure what this case is about, that it is for pecuniary loss. The Court tells you that—pecuniary loss sustained by these people. That is what the law says, and that is what the Court's instruction says, and that's what they are entitled to. And that you be fair to both sides. Thank you."

It will be noted that the trial court instructed the jury to disregard the reference to "blood money" but that the court did not reprimand or rebuke counsel for the use of the phrase. Plaintiff contends that the trial court erred in having failed to rebuke counsel in addition to having instructed the jury to disregard the expression "blood money."

Plaintiff failed to make any other objection to the entire argument of defendant's counsel. He now points to other expressions used by defendant's counsel in his argument on the theory that, while conceding that questions involved in other portions of the argument have not been preserved for our review, they, nevertheless, may be considered by us in determining the prejudicial effect of the use of the expression "blood money" and the failure of the trial court to have rebuked counsel therefor. We deem it unnecessary to set forth and discuss specifically the other portions of the argument to which plaintiff points. Suffice to say that it is true, as plaintiff contends, that the tenor of the argument was to castigate deceased's adult children for an effort which counsel characterized as one to exploit their mother's death, as they exploited her during her life, by claiming an unjustified amount as their pecuniary loss.

The trouble with plaintiff's present position, as we see it, is that plaintiff's counsel in his opening argument anticipated, and in a measure invited, the very argument that defendant's counsel made. Despite that fact plaintiff's counsel sat by and failed to note a single objection to the entire argument except the one noted. Plaintiff's

counsel, in opening argument, after having pointed out to the jury that it was only when the instant trial began that defendant Oliver admitted, in effect, that he was legally liable for the wrongful death of Mrs. Helling, and that defendant had thereby at the last minute attempted to create the impression that Oliver had always admitted liability for the pecuniary loss sustained by the survivors, then argued: "So he attempts to go at it in another way then and tries to create in your mind, hoping that there will be enough of you who will grasp this opinion that these children are attempting to make a financial profit from the death of their mother. He didn't say that. That would be crude. But he is injecting that and has tried to inject that by insinuation, and innuendo, and by asking the children here whether they considered their mother a financial asset, as if a mother's services can be bought at any time. * * * That is a very shrewd; that is a clever method of trying to handle the case before a jury. It is much more effective than just to plunge forthright a statement to that effect, and yet, that is exactly the impression that they have tried to give you."

It is apparent that this is not a case in which plaintiff's counsel made repeated objections to the defendant's theory, above stated, either during the reception of evidence or during argument and in which defendant's counsel persisted after adverse rulings by the trial court. On the contrary, defendant's theory was clearly recognized by plaintiff and, consequently, in the absence of a single objection except the one noted we are of the view that the only matter properly before us for consideration is the narrow question of whether the trial court committed reversible error, after sustaining an objection to the use of the phrase "blood money" and instructing the jury to disregard it, in having failed to rebuke counsel. It is entirely clear to us that even if it be assumed that the trial court should have reprimanded defendant Oliver's counsel, the judgment should not be reversed for that failure. That is because plaintiff's motion

for new trial contained the specific matters of argument here complained of and was overruled by the trial court. The trial court in so ruling considered the effect of defendant's argument and the effect of the court's failure to have reprimanded counsel. Bedenk v. St. Louis Public Service Co., Mo., 285 S.W.2d 609, 618 [14]. We hold, on the record before us, that the trial court did not abuse its discretion in overruling plaintiff's motion for new trial as to the argument specifications.

■ Plaintiff contends that the trial court erred in refusing to admit in evidence the original answer of defendant Oliver. It appears that in his original answer defendant Oliver denied his negligence and averred that any injuries Mrs. Helling received were due to her own negligence in failing to warn the driver of the automobile in which she was riding of the presence on the highway of defendant Oliver's automobile. Plaintiff points to the rule that abandoned pleadings are admissible when they contain admissions or statements of fact against the interest of the party in whose pleadings they appear. Wahl v. Cunningham, 332 Mo. 21, 39 [13], 56 S.W.2d 1052, 1059 [14, 15]. There is nothing wrong with the rule but it is inapplicable to the instant case. Plaintiff now contends that the original answer should have been admitted because it would have tended to prove that up to the day of the trial defendant Oliver had asserted that the fatality was caused by the negligence of codefendant Waller and would have tended to show also that up to the day of trial defendant Oliver claimed full knowledge of the facts pertaining to the collision, while at the trial his testimony was that he remembered nothing other than that as he was driving along an "explosion" occurred. He was unable at the trial to give any of the pertinent details of exactly how the accident happened. Plaintiff says that the prejudicial effect of the claimed error is demonstrated by a statement in defendant's counsel's argument to the effect that it had never been claimed that codefendant

Waller was negligent and that he had been joined for some strategic purpose from the standpoint of plaintiff's counsel.

■ In the first place, the original answer of defendant Oliver did not assert the negligence of codefendant Waller. On the contrary, it simply denied Oliver's negligence and set up the contributory negligence of the deceased passenger. Secondly, even if the allegation in the original answer be construed as tantamount to a claim that the negligence of codefendant Waller was the sole or concurring cause of the casualty, an amended answer admitting that codefendant's negligence did not cause the fatality would not make the allegation in the original answer an admission against interest. It is clear to us that the only admission against interest would be the allegation contained in the amended answer admitting that codefendant was not negligent. Further, it appears that the admission of the answer, for at least one of the noted purposes which plaintiff now contends would have been served by it, would have permitted plaintiff to directly impeach the credibility of defendant Oliver who was called as a witness by plaintiff. It is well established that a party may not directly impeach the credibility of his own witness even though he be the other party to the suit. Frank v. Wabash Railroad Co., Mo., 295 S.W.2d 16. And, finally, it is apparent that the trial court at the time he ruled the admissibility of the original answer did not have before him and could not anticipate what the argument of defendant Oliver's counsel was to be. Certainly, in the absence of an objection at the time of the argument now complained of, plaintiff is in no position to urge that the trial court erred in failing to have admitted the original answer.

The record shows that during the cross-examination of the administrator (son) of deceased, the following occurred:

"Q. And you never figured your mother was a financial asset at that time, did you? A. Not at that time.

"Mr. Landau: I object—

"The Court: He may answer the question.

"The Witness: I did.

"The Court: Go ahead.

"The Witness: Not at that time. I do now—financially, now.

"By Mr. Carter: Q. When did you start figuring this financial loss you expected as a result of your mother's death?

"Mr. Landau: I object to the form of the question. He never did say he started figuring financial loss.

"The Court: Objection sustained to the form of it.

"By Mr. Carter: Q. When did you begin to consider, or think about your mother's death in terms of financial loss? A. When I had to hire someone baby-sitting I could understand what I must begin to spend, that's part of it."

■ Plaintiff now contends that the foregoing incident (the only one set forth) is a typical illustration of the unfair cross-examination by which he contends the trial court erroneously permitted defendant's counsel "to draw an unfavorable inference from plaintiff's exercise of his legal right to institute this action". In the first place, the same question was asked and answered without objection during the cross-examination of the witness, Hazel Brown, a daughter. Further, aside from the facts that plaintiff's counsel did not state any grounds for his objection prior to the court's ruling that the witness might answer, or press any reason for the objection after the court's ruling, and aside from the further fact that the objection came after the answer and that there was no motion to strike, we are unable to perceive how the questions and answers noted had anything to do with plaintiff's *legal right* to institute the action or that any inference relating thereto was drawn by defendant's counsel. We, therefore, rule that plaintiff's contention in that respect is without merit.

■ Plaintiff contends that the trial court erred in refusing his offered instruction on the measure of damages. The record shows that plaintiff offered two damage instructions and that the court gave one of them. In any event, however, decisive of the question here is the fact that the record shows that plaintiff made no objection to the refusal of the court to give the instruction. In the absence of an objection, the question has not been preserved for our review. Section 510.210 RSMo 1949, V.A.M.S., Holmes v. Simon, Mo., 287 S.W. 2d 877 [1–3].

■■ Plaintiff finally contends that the judgment for $2,000 is grossly inadequate. "The trial court, in overruling plaintiff's motion for new trial on the ground of inadequacy of verdict, weighed the evidence and determined that [the] verdict * * * was not against the weight of the evidence. * * * We do not weigh the evidence in this action. We determine only whether the trial court abused its discretion in overruling plaintiff's motion for new trial on the ground of inadequacy of verdict. * * * In making this determination, we examine the record to ascertain whether there is substantial evidence to support the action of the trial court. * * *" Roush v. Alkire Truck Lines, Mo., 245 S.W.2d 8, 10 [1] [2] [3].

Two of deceased's daughters, her son, and a son-in-law testified as to services rendered them by their mother during her lifetime as tending to establish the claimed pecuniary loss the children suffered by reason of her death. The evidence showed that deceased had been living with one of her daughters, Hazel Brown, for the six years preceding her death. That daughter's household at the time consisted of her husband, herself, and three children, 15, 11, and 4. The husband and wife both worked. For the two years prior to her death deceased took care of the

three children, cleaned the house, did the laundry, ironed, ministered to the children when they were ill, washed the dishes part of the time, made bedding, made some of the children's clothes, and mended. In emergencies she went to Mrs. Kennett's (another daughter's) home to see that things were running smoothly and took over there. Because of her experience in the administration of home medical remedies it was unnecessary to call a doctor for usual illnesses such as whooping cough. It was estimated that it would cost Mrs. Brown six or seven dollars a week or six or seven dollars a day to hire someone to do the housework which the mother had done. The mother acted as counsellor in domestic difficulties, raised a vegetable garden and provided vegetables for the Brown's table during summer months. On one occasion she went to the home of the Kennetts and helped her son-in-law can peaches.

Mr. Kennett said that she helped in their home before and after the birth of a child and that she had done the Kennett's washing since 1937. She often cooked their meals, often sent food for their table and cut the grass. She fed the Kennett's chickens and dogs when the Kennetts were away on weekends or other trips. It had been planned that when Mrs. Kennett's last baby was born (subsequent to deceased's death) deceased was to take care of the baby.

The son, Winston Waller, said that his mother rendered baby-sitting services for his two children. She came to his home when the two children were born. She administered home medical remedies, both for the son and for the children, such as treatment for blood poisoning and shingles.

Mrs. Nun, one of the daughters, testified that she also was to have a baby (which arrived after the mother's death) and it had been planned that the mother would take care of her other children in Mrs. Brown's home after the baby was born. When Mrs. Nun was hospitalized in 1946, deceased took care of her children. During the few years prior to her death, her mother spent some Saturdays and Sundays at Mrs. Nun's doing the cooking, some of the washing, and some of the cleaning.

It further appeared that none of the children had, since their mother's death, hired any outside help to perform the services which their mother previously had performed for them; that their mother would take no money for her services; that she had no means of support; that she left no estate; and that board, room, clothing, and spending money were furnished her by the children.

"It is difficult to fix a pecuniary value upon human life. The jury has an extraordinarily wide discretion in determining the amount of compensation for a wrongful death under proper instructions of the court. The verdicts of different juries will differ widely upon similar facts. As stated in Hertz v. McDowell, 358 Mo. 383, 214 S. W.2d 546, 550 [9]: 'The legislative intent * * * is to give the jury a broad discretion in computing damages for wrongful death, within the limit prescribed, based upon the *pecuniary loss* of every kind and character which, under all the circumstances of the particular case, would necessarily result from the death, to those entitled to recover (and the jury, in a proper case, may also diminish or increase the amount because of circumstances which they may find in mitigation or aggravation of the wrongful act, neglect, or default which caused the death).' Steger v. Meehan, Mo., 63 S.W.2d 109, 115; Owen v. Brockschmidt, 54 Mo. 285, 289; Oliver v. Morgan, Mo., 73 S.W.2d 993, 997.

"Plaintiff's evidence on his pecuniary loss was uncontroverted, but the weight and sufficiency of that evidence, as well as the credibility of the witnesses, were also peculiarly within the province of the jury in the first instance. The jury may believe or disbelieve the testimony of witnesses although the testimony be uncontradicted.

Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559 [1–3].

"The statutory limit of recovery is not meant to be the maximum value of a human life, Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S.W.2d 115, 121 [11], but the statute fixes the maximum limit within which the jury may exercise its broad discretion.

"The record is to be viewed favorably to the verdict and the trial court's approval of it." Combs v. Combs, Mo., 284 S.W.2d 423, 426 [5] [6] [7] [8].

It is our view that the trial court reasonably could have concluded, upon weighing the evidence, that a jury would have been justified in finding from all the evidence, even assuming that the nature and extent of the services rendered by the mother were as extensive as testified by the children, that the pecuniary value of those services rendered under the circumstances of the family relationship which existed between deceased and the families of her adult children, did not exceed in any substantial amount the value of a home and living costs which were furnished by the children to their mother. Further, while the evidence was such that a jury could have found that the circumstances of deceased's death were aggravated, still the evidence did not compel that finding. Inasmuch as the trial court weighed the evidence, considered plaintiff's contentions that prejudicial cross-examination and prejudicial argument had affected the jury and had accounted for the small verdict, and decided that under all the circumstances in evidence the jury's verdict was not grossly inadequate, we may not hold, on the record here, that the trial court abused its discretion in overruling plaintiff's motion for a new trial on the ground of inadequacy of the verdict.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.