Robert M. PATISON, Administrator of the Estate of Bessie Virginia Patison, Deceased, Appellant,

v.

Minnie Renick CAMPBELL, Willard Neal and C. P. Brockman, Respondents.

No. 47813.

Supreme Court of Missouri,

Division No. 2.

July 11, 1960.

 

Arthur M. O'Keefe, Moberly, James Glenn, Macon, for appellant.

Marion E. Lamb, Moberly, Don Carter, Sturgeon, for respondent, Minnie Renick Campbell.

HUNTER, Special Judge.

This is an action for $25,000 on behalf of the heirs by Robert M. Patison, appellant, as administrator of the estate, for the wrongful death of Bessie Virginia Patison, who was killed on January 17, 1956, in a collision of the automobile in which she was a passenger with her host, respondent Minnie Renick Campbell, and a truck owned or operated by defendants Neal and Brockman.

The jury returned its verdict in favor of defendants Neal and Brockman, and the appeal as to them has been dismissed on earlier motion. As to respondent Campbell the verdict returned was: "We, the jury, find the issues in favor of plaintiff and against defendant, Minnie Renick Campbell, and we assess plaintiff's damages in the amount of $No Dollars."

On this appeal, appellant presents two contentions: (1) The verdict is so inadequate as to show bias and prejudice on the part of the jury; and (2) a verdict for the plaintiff and assessing no damages is improper and the cause should be returned for the assessment of damages.

The relevant evidence is brief. Deceased, a widow, was survived by four children, Margaret Wilson, Helen Bagby, Ernest Patison and Robert Patison. The two sons do not claim any pecuniary loss from their mother's death. The two daughters, who lived in St. Louis, Missouri, do claim such loss.

Robert Patison testified that since his mother's death he has learned his mother's income was "about two hundred dollars a month," its source being Railroad Retirement, Veterans Administration and room rent from two lady roomers at his mother's

home in Moberly, Missouri. She had contributed some money to the two daughters but he did not know how much. His mother was 74 years old, somewhat active in church affairs, and in excellent health at the time of her death.

Helen Bagby, in 1956 a divorcee with three children, all boys, 14, 13 and 10 years of age, testified that in 1955 her mother gave her in all "around $300." The $300 was represented by a $25 gift to her youngest son for clothes so he could attend a wedding; some money so she could buy her older boy clothes so he could graduate from grade school—and money for the boys' shoes "or anything they needed." In 1955 deceased was in St. Louis five or six times for from two to four days each visit. On such occasions she would buy the groceries —from $10 to $20 worth. There was no regularity as to when deceased would send money—"just when she thought I needed it." She and her three boys had vacationed two weeks without charge with her mother at her mother's home. In prior years her mother had helped her even more.

At the time of her mother's death, Mrs. Bagby was employed by Angelica Uniform Company and was making $225 a month. She stated the $300 given in 1955 was necessary support and indicated that without it she couldn't have kept all her children in school as long as she did.

Mrs. Wilson, a widow with three girls, who at the time of her mother's death were 21, 19 and 16, testified that she and her two unmarried daughters in 1955 lived in an apartment in St. Louis. Her 1955 income consisted of $23 a week from her employment, $73.90 a month for herself and $73.90 for her youngest daughter from social security. Her oldest daughter worked and paid her mother $10 a week board and room. Her second oldest daughter married about three weeks before Mrs. Patison's death.

Mrs. Wilson stated deceased had given her money all her life. In 1955, at various times and in odd amounts deceased gave her a total of "close to $200." Deceased in 1955 visited her in St. Louis about five times and she visited deceased in Moberly one time, each visit being the occasion for some contribution of money to her by deceased who also bought the groceries on such visits. She indicated these gifts of money from her generous mother were needed in order to make ends meet.

According to the mortality table introduced in evidence a woman 74 years old has a life expectancy of 12.14 years.

It is appellant's view that since deceased contributed about $500 and groceries to her daughters in the year immediately preceding her death and since her life expectancy was twelve years or more, a minimum damage of $6,000 was suffered by the two beneficiaries.

Appellant has treated the verdict as for plaintiff but inadequate. If the verdict is viewed as one for defendant then the rule applies that where the burden of proof is on the plaintiff who relies on oral testimony to establish the essential element of his cause of action a verdict in defendant's favor is not required to have evidentiary support but rests upon a finding by the jury against the party having the burden of proof, and after the trial court exercises its discretion by overruling a motion for new trial, the appellate court, on the sole contention of abuse of discretion thereby, will not entertain the contention. J. D. Streett & Co. v. Bone, Mo., 334 S.W.2d 5. However, we are content to treat it as a verdict for plaintiff but allegedly inadequate.

The trial court, in overruling plaintiff's motion for a new trial on the ground of inadequacy of the verdict, weighed the evidence and determined that the verdict was not against the weight of the evidence. We determine only whether the trial court abused its discretion in overruling plaintiff's motion for a new trial on that ground. Waller v. Oliver, Mo., 296 S.W.2d 44; Roush v. Alkire Truck Lines, Mo., 245 S.W. 2d 8; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469.

Our legislature has provided that in wrongful death actions, " * * * the jury may give * * * such damages * * * as the jury may deem fair and just for the death and loss thus occasioned, with reference to the necessary injury resulting from such death, and having regard for the mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in such death." Section 537.090 RSMo 1949, V.A.M.S.

■■ It is well settled that compensatory damages for wrongful death must be limited to the pecuniary loss to the beneficiaries. As stated in Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546, 550: "The legislative intent * * * is to give the jury a broad discretion in computing damages for wrongful death, within the limit prescribed, based upon the *pecuniary loss* of every kind and character which, under all the circumstances of the particular case, would necessarily result from the death, to those entitled to recover (and the jury, in a proper case, may also diminish or increase the amount because of circumstances which they may find in mitigation or aggravation of the wrongful act, neglect, or default which caused the death)." It is difficult to put a pecuniary value on human life. The jury has an extraordinarily wide discretion in determining the amount of compensation for a wrongful death, and the verdicts of different juries will differ widely upon similar facts. See, Waller v. Oliver, supra; Combs v. Combs, Mo., 284 S.W.2d 423.

■ In the case before us and as noted in the Combs case, supra, loc. cit. 426: "Plaintiff's evidence on his pecuniary loss was uncontroverted, but the weight and sufficiency of that evidence, as well as the credibility of the witnesses, were also peculiarly within the province of the jury in the first instance. The jury may believe or disbelieve the testimony of witnesses although the testimony be uncontradicted." See, also, Greenwood v. Wiseman, Mo., 305 S.W.2d 474, 478.

Additionally, the statute provides the jury may consider the mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in the death. Appellant has not favored us with a complete transcript but has provided a partial transcript setting out the testimony of only three witnesses relating solely to damages and the instructions. We know nothing about the circumstances of the occurrence occasioning the death. Cf., Wood v. St. Louis Public Service Co., Mo., 228 S.W.2d 665, 17 A.L.R.2d 868.

The evidence is such that the jury may have concluded that the two adult daughters suffered no pecuniary damage or that, if they did, it was minimal and mitigated by circumstances not before us. Cf., Waller v. Oliver, supra, 296 S.W.2d loc. cit. 51[9]. It may have viewed the evidence as indicative of mere occasional small gifts to adult children with no reasonable probability of their continuance in view of the mother's advanced age, income and situation. Cf., Lynch v. St. Louis Public Service Co., Mo. App., 261 S.W.2d 521, 526; Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 954, 145 A.L.R. 1176.

■ Considering the wide discretion accorded the jury by the statute and the fact that the abbreviated transcript does not disclose the circumstances attending the accident that resulted in the death, we are not prepared on the record here to find that the verdict is so inadequate as to show bias or prejudice on the part of the jury and that the trial judge abused his discretion in overruling appellant's motion for a new trial on the grounds of inadequacy of the verdict. We rule this contention against appellant.

Appellant's remaining assignment of error is that a verdict for the plaintiff and assessing no damages is improper. The assignment fails to state any reason for its conclusion but by reference to the accompanying argument we are advised that upon a finding for plaintiff the plaintiff is entitled to have actual damages in some amount as-

sessed or, in any event, to have nominal damages.

■ We have examined the instructions. A literal compliance with those given at appellant's request could result in the verdict rendered. Under Instruction No. 1 the jury was told in effect that if it found Minnie Renick Campbell negligent and that such negligence caused or contributed to cause the collision which resulted in Mrs. Patison's death it must find for plaintiff and against defendant Campbell. Instruction No. 12 directed the jury to assess as damages the pecuniary injury, "if any," that resulted to the next of kin who were dependent in whole or in part on said Bessie Virginia Patison for support or to whose support she contributed or had promised to contribute. Under Instruction No. 1 the jury could have found liability and under Instruction No. 12 it could have found no pecuniary injury. In this, Instruction No. 1 differs from the usual personal injury suit verdict-directing instruction that not only requires therein a finding of liability but also a finding of injury of plaintiff, and from punitive damage instructions wherein actual damages must be found as a predicate for the recovery of exemplary damages.

In 25 C.J.S. Death § 96, page 1238, it is stated, "According to the general current of American authority, where it appears in a statutory action for death that the death was caused by defendant's negligence, nominal damages may be recovered, although no actual pecuniary damage has been shown, * * * Only nominal damages can be recovered where the question of pecuniary loss is purely a matter of speculation or conjecture; * * *." In Stroud v. Masek, Mo., 262 S.W.2d 47, 51, this court said, "Judgment for nominal damages is a substantial right since such a judgment decides the incident of costs. For that reason it may carry a reversal of a judgment that does not award nominal damages." See, also, Section 514.110 RSMo 1949, V.A.M.S., now Civil Procedure Rule 77.11; State ex rel. Armour Packing Co. v. Dickmann, 146 Mo.App. 396, 124 S.W. 29, 31. Again in Curd v. Reaban, Mo., 232 S.W.2d 389, 392, we said, "And in this jurisdiction a judgment for nominal damages is a substantial right since such a judgment decides the incidence of the costs (State, to Use of Goddard, v. Rayburn, 22 Mo.App. 303) *and for that reason* may compel a reversal of a judgment which does not award nominal damages. But *in this case the court assessed the costs against the defendants and no substantial rights of the plaintiffs were violated.* Hesse v. Imperial Electric Light, Heat & Power Co., 144 Mo.App. 549, 129 S.W. 49." (Italics ours.)

In jurisdictions where nominal damages do not carry the costs, the courts have refused to reverse judgments in order to allow the plaintiffs to recover such damages. See Hesse v. Imperial Electric Light, Heat & Power Co., supra, 129 S.W. loc. cit. 50.

■ In the case before us the trial court assessed the costs against the defendant-respondent who acknowledges the propriety of being taxed for them. Just as in the Hesse case, supra, no substantial right of the plaintiff was violated by the trial court refusing to grant a new trial because the verdict failed to contain nominal damages. Here, as in that case, the alleged error did not result in prejudice to the losing party. Nonprejudicial error will not justify reversal of a judgment and appellate courts may not reverse judgments because of them. State ex rel. Missouri Mutual Ass'n v. Allen, 336 Mo. 352, 78 S.W.2d 862; Section 512.160(2) RSMo 1949, V.A.M.S.

Respondent filed a motion to dismiss the appeal because of certain alleged inadequacies of the transcript. We took this motion with the case and overrule it, having priorly noted the effect of the partial transcript on the merits of appellant's first contention.

For the reasons stated, the judgment is affirmed.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.