**Vannie Kay KLINE, Plaintiff-Respondent,**

v.

**Jeffrey John KLINE, Respondent-Appellant.**

**No. WD 35727.**

Missouri Court of Appeals, Western District.

Dec. 18, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 29, 1985.
Application to Transfer Denied April 2, 1985.

F. Joe Delong, III, Jefferson City, for respondent-appellant.

Betty K. Wilson, Oliver, Walker, Carlton & Wilson, Columbia, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

LOWENSTEIN, Judge.

This is an appeal by a father whose request for joint custody was denied; sole custody of the only child was awarded to the respondent-mother.

The mother and father were married 14 years prior to dissolution on February 1, 1984. A son was born on May 27, 1980. Although both have cared for him, the mother has provided the primary welfare and care. The record indicates a turbulent marriage, marred by abusive behavior toward the mother by the father, some of it in front of the boy. The father was shown to overreact angrily to relatively minor situations. The parents are extremely resentful of each other and have over a period of years been in constant disagreement over the care of the child. The mother is a clinical psychologist, the father a physician. Any likelihood of agreement on any plan of joint custody as of the time of trial appeared to be nil. There was expert testimony that both parents could be fit custodians and both loved the boy. Evidence indicated the mother to be the most qualified, and that because of the deep resentment and power struggles between the two the child could be a pawn and that a joint custodial situation would not be appropriate. Dr. Alfie, a child psychiatrist who testified for the mother strongly suggested liberal visitation be granted to the father.

The father contends that the trial court erred in not awarding joint custody. A guardian ad litem for the child did not join in the appeal. This is a case of first impression in Missouri since prior to 1983 legislative action, joint custody was not available in Missouri. *Cradic v. Cradic,* 544 S.W.2d 605, 607 (Mo.App.1976). There are no cases interpreting § 452.375.3 RSMo (Supp.1983), applicable to this case, which provides:

> As between the parents of a child, no preference may be given to either parent in the awarding of custody for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child. The court *may award joint custody or sole custody to either parent,* or when the court finds that each parent is unfit or unable and that it is in the best interest of the child, then to a third party (emphasis added).[1]

While there are proponents for *presumption* for joint custody, Blond, "In the Child Best Interests—A Better Way: The Case for Presumptive Joint Custody in Missouri" 52 UMKC L.Rev. 567 (1984),[2] the father concedes that as the statute now reads, joint custody is merely an *option.*[3] Therefore on appeal, the trial court's findings on matters of custody still control unless the reviewing court is convinced

---

1. This section has since been amended. The present law is found in the 1984 supplement of the Revised Statutes. It now separately defines joint *legal* custody and joint *physical* custody. Subsection three, in effect since August 14, 1984 now reads:

> As between the parents of a child, no preference may be given to either parent in the awarding of custody for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child. The court may award joint *physical custody or joint legal custody, or both,* to both parents or sole custody to either parents, or when the court finds that each parent is unfit or unable, and that it is in the best interest of the child, then to a third party. (Emphasis added.)

2. At present there are three states with a statutory joint custody preference. *See* Cal.Civ.Code § 4600.5(a) (West 1983); Kan.Stat.Ann. § 60–1610(a) (Supp.1982); Nev.Stat. § 125.490 (1981);

3. Missouri joins at least seven other states which presently allow the option of joint custody: *See* Iowa Code Ann. § 598.21(4)(b) (West 1981); Me.Rev.Stat.Ann. Tit. 19 § 214 (Supp. 1982); Mich.Comp.Laws § 722.23; N.J.Rev.Stat. § 2A:34–23; Or.Rev.Stat. § 107.095(1)(b); Pa. Stat.Ann. Tit. 23 § 1005 (Purdon 1981); Wisc. Stat.Ann. § 767.24(1)(b) (West 1981).

Two states have statutes which allow joint custody if there is an agreement between the parties: *see* Colo.Rev.Stat. § 14–10–129; Tex. Fam.Code Ann. § 14.06 (Vernon Supp.1984).

that the welfare of the child requires some other disposition. *Fastnacht v. Fastnacht*, 616 S.W.2d 98, 100 (Mo.App.1981). It is presumed that the trial court studied the evidence thoroughly and ordered that which was in the best interests of the child. *Id.*

The father urges adoption of the criteria set out by the New Jersey Supreme Court in *Beck v. Beck*, 86 N.J. 480, 432 A.2d 63, 71–72 (1981), in deciding whether joint custody is appropriate. The requirements are that 1) both parents are "fit," 2) both desire continuing involvement with their child, 3) both parents are seen by the child as sources of security and love, and 4) both parents are able to communicate and cooperate in promoting the child's best interests. In *Beck*, the trial court *sua sponte* awarded joint custody, and the defendant-mother appealed. The supreme court held that it was well within the trial court's discretion to make such an award, but since two years had elapsed since the original decree, the case was remanded for additional fact finding consonant with the opinion.

Since the *Beck* decision, two New Jersey opinions have applied the four requirements and decided sole custody was the best solution. In *Helentjaris v. Sudano*, 194 N.J.Super. 220, 476 A.2d 828, 830 (1984), custody to the mother was upheld stating that "[j]oint custody was clearly out of the question because of the inability of the parents to cooperate . . ." In *Mastropole v. Mastropole*, 181 N.J.Super. 130, 436 A.2d 955, 959–60 (1981) the court reversed an award of joint custody because the standards of *Beck* had not been met. The child was ambivalent about staying with the father, and preferred the mother. Also the evidence showed the parents were "unable to isolate their personal conflicts from their roles as parents."

The father points to a Pennsylvania decision, *In re Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982), where the court adopted the *Beck* criteria and remanded the case to the trial court, which originally granted sole custody to the father for further consideration on those four factors.

The court also noted that "the absence in the record of animosity of one parent toward the other strengthens the case for shared custody." *Id.* 445 A.2d at 1249. Clearly the present case has no such absence. The record indicates the parents have bitterly disagreed about their son's upbringing, including his medical care, substitute child care, religious training, and proper role modeling behavior.

■■■ For the purposes here the *Beck* criteria need not be embraced or denied, for they are all inherent components of the polestar of custody cases: the best interests of the child. Given that one standard, and considering the facts in this case, the trial court did not abuse its discretion in granting sole custody to the mother. Deference is given to the trial court's ability to hear and weigh the evidence. Here the potential for cooperation in joint decision making was far outweighed by the evidence of power struggles and hostility. Under the applicable scope of review this court finds no reason to set aside the judgment awarding sole custody to the mother, that conclusion being in the best interest of the child and not clearly erroneous. *Cissell v. Cissell*, 573 S.W.2d 722, 724 (Mo. App.1978).

■■■ Absent legislative mandate to the contrary, this court feels that judges should be given as much lattitude and discretion as possible in the area of child custody. Since the general assembly has had the opportunity but has chosen to include no presumptions relating to custody, the courts should follow suit. The legislature has chosen only to remove presumptions, *i.e.*, the deletion of the "tender year's doctrine." Section 452.375(3). Likewise, since the advent of the additional tool of joint custody in 1983, there have been no requirements of things or solutions the trial courts *must* use in custody matters. This results in an increased reliance on the good judgment of Missouri judges and the co-operation of the family law bar in custody matters.

The award of joint custody is discretionary. The review of the use or non-use of it in a particular case is the same as for any appeal in family law cases. This concept is but another arrow in the quiver of solutions for trial judges. Courts of Missouri should not be constrained to order joint custody just because the parties so stipulate or agree; similarly one of the parents should not be able to veto such a court decision by failure to agree or failure to cooperate with the joint custody determination.

The father's other contention is that the trial court erred in not including in its decree a restriction that neither parent move out of the Boone/Callaway County area without the other's written permission or court order.

The only statutory authority along these lines is § 452.375(6) RSMo (Supp.1983) which places a restriction on a custodial parent moving out of the *state*. But even in that situation courts have continually allowed the custodial parent to move. This court said in *In re the Marriage of Bard*, 603 S.W.2d 108, 109 (Mo.App.1980); "[i]n our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child."

The same thing can be said of a move *within* the state. In the *Helentjais v. Sudano* case *supra* 476 A.2d at 832, the appellate court reversed a trial court's restriction on the custodial mother that she locate within a 40-mile radius of the father. The court pointed out that "the family unity which is lost as a consequence of the divorce is lost irrevocably, and there is no point in judicial insistence or maintaining a wholly unrealistic simulation of unity." There the facts were quite similar to the present case in that the mother was a physician and the father an engineer with a Ph.D. in physics. The appellate court said that it would be no more difficult for the father to relocate his career than for the mother. In fact "[i]f either is to sacrifice

in this respect, there is indeed less reason to demand the sacrifice to be made by the custodial parent since it is she in the end who must arrange her life in a manner consistent with the day-to-day burdens of simultaneously raising a child and pursuing a career."

In this case, if and when the mother plans to move out of Boone/Callaway Counties or even the state, at that point the non-custodial father can petition the trial court to review what is in the best interests of the child. Provisions to insure a relationship with both parents can be made without confining the residence of the mother. *In re Marriage of Dusing*, 654 S.W.2d 938, 942 (Mo.App.1983). The point is denied.

The request for damages by the mother for frivolous appeal, Rule 84.19 is denied. The judgment of the trial court is affirmed.

All concur.