**HILIUS CHARLES, Plaintiff**

v.

**MARILYN CHARLES, Defendant**

Family No. D178/1987

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

December 16, 1987

BRIAN L. MASONY, ESQ., St. Croix, V.I., *for plaintiff*

EDGAR D. ROSS, ESQ., St. Croix, V.I., *for defendant*

ELTMAN, *Judge*

## MEMORANDUM OPINION

In this divorce action, the plaintiff father seeks joint legal custody of the parties' one child. While such an arrangement is desirable in the abstract, the objection to it by the defendant mother, coupled with an attitude of hostility and suspicion which the parties harbor for each other, require that legal custody be awarded to the mother, with liberal rights of visitation by the father.

### FACTS

Hilius Charles and Marilyn Charles were married in 1980. They are the parents of one child, Shani, who is 5 years old. The marriage deteriorated over time; the parties separated and ultimately sought divorce from one another. In the midst of trial on October 28, 1987, counsel reported a settlement, which proved elusive. Trial commenced again, and was concluded on November 18, 1987. All of the outstanding issues have been previously decided, except for the custody question.

The plaintiff complains about certain aspects of the defendant's care of Shani. He testified that his wife has not been sufficiently attentive to the child, who is small and needs encouragement in eating. He claims that the defendant has been too independent and does not spend enough time with Shani. Mrs. Charles has taken the child to Dominica on several occasions to stay with her family for

extended periods of time; some of these trips have been made without the plaintiff's consent.

Despite certain of his allegations, Mr. Charles does not press the argument that the mother is unfit, since he has consented to physical custody of Shani remaining with her. Rather, he does not seem to trust Mrs. Charles to make child-rearing decisions by herself, without his input. He also wants joint custody to ensure that Shani is not removed from St. Croix without his consent.

Mrs. Charles, on the other hand, testified that Shani was taken to Dominica with the agreement of her husband. During one of these long sojourns, while the defendant was occupied attending school on St. Thomas, Mr. Charles never visited Shani. Mrs. Charles claimed that after the couple separated, he rarely came to visit his daughter and, when he did, he would stay for only 15 to 30 minutes.

Mrs. Charles' reasons for wanting sole custody are (a) that she does not want Mr. Charles to be able to visit Shani anytime he pleases, without consulting her, and (b) that she wants the right to raise Shani in her Catholic religion. She also objects that Shani's aunt, and not her father, takes the child to church.

## DISCUSSION

As this court understands and accepts the term, joint legal custody contemplates the co-equal involvement of both parents in major decisions concerning the child's life. Such major decisions, in this context, include education, medical care, and discipline. P. Axelrod, A. Everett and A. Haralambie, Handling Child Custody Cases, § 5.01, at 50 (1983).

Virgin Islands law neither sanctions nor proscribes an award of child custody jointly to the father and mother. The only relevant statutory guidance is 16 V.I.C. § 109(1) which merely directs the court, in a divorce decree to provide

> for the future care and custody of the minor children of the marriage as it may deem just and proper, having due regard to the age and sex of such children and giving primary consideration to the needs and welfare of such children.

The defendant does not contest the authority of the Court to award joint custody. Moreover, it is apparent that "the authority to grant joint custody is an integral part of the broad and inherent authority of a court in exercising its equitable powers to determine child custody." Taylor v. Taylor, 508 A.2d 964 (Md. 1986).

Where joint custody is appropriate, it is increasingly regarded as the most beneficial and least damaging way to restructure the family after the dissolution of a marriage. Studies have indicated that the traditional model of sole custody in one parent and visitation with another does not necessarily best accommodate the needs of the children and may result in greater stresses for the children, the custodial parent and non-custodial parent alike as compared to a joint custody model. Joint Custody and the Right to Travel: Legal and Psychological Implications, 24 Journal of Family Law 625, 638 (1985–86). Research has also suggested that the relitigation rate is substantially lower in joint custody versus sole custody arrangements. Id., at 646. However, the cited studies do not appear to differentiate between situations in which the noncustodial parent is physically distant and those in which the family is geographically close. Without regard for the legal aspects of the custody arrangement, it has been found that

> those fathers who maintain regular prolonged contact with their children do best in the post-divorce period. This is paralleled by evidence that the children of such fathers tend to make the best post-divorce adjustment. There is also mounting clinical evidence that treatment (psychological) of the father which focuses on helping him maintain his relationship to his children will have the most salutory effect on all members of the family.

Jacobs, The Effects of Divorce on Fathers: An Interview of the Literature, 139 Am.J. Psych. 1235 (1982), cited in P. Axelrod et al., supra at 644. Thus, many of the benefits of joint legal custody may be achieved or at least approached in a sole custody arrangement where the noncustodial parent lives nearby and is able to spend substantial time with his or her children.

■ Some of the most important factors which the court should consider in deciding whether to award joint custody include: (a) the fitness of the parents, Mastrophole v. Mastrophole, 436 A.2d 955 (N.J. 1981); (b) the age of the child, Daniel v. Daniel, 238 So. 2d 108 (Ga. 1977); (c) the preference of the child, In re Marriage of Burham, 238 N.W.2d 296 (Iowa 1976); and (d) the proximity of the parents' residence, Beck v. Beck, 432 A.2d 63 (N.J. 1981). For a comprehensive review of joint custody considerations, see Taylor v. Taylor, 508 A.2d 964 (Md. 1986).

■ Despite the mutual recriminations of the parties, the record is devoid of any evidence which would suggest the unfitness of either the father or the mother in this case, so that the first criterion is not a consideration. As to the age of the child, the fact of her tender years, absent other considerations, favors awarding legal custody to only one parent. Bienvenu v. Bienvenu, 380 So. 2d 1164 (Fla. 1980); Lumbra v. Lumbra, 394 A.2d 1139 (Vt. 1978). Her young age, in addition, eliminates the significance of her preference. The fact that both parents live on St. Croix operates in favor of joint custody in the absence of other circumstances.

■ The most important elements, however, in deciding a request for joint custody is the willingness of the parents to participate in such an arrangement. Taylor v. Taylor, supra at 972; Rolde v. Rolde, 425 N.E.2d 388 (Mass. 1981). Indeed, many courts have held that joint custody should be awarded only where the parties agree. Braiman v. Braiman, 378 N.E.2d 1019 (N.Y. 1978); In re Manuele, 438 N.E.2d 691 (Ill. 1982). Gonzalez v. Gonzalez, 672 S.W.2d 887 (Texas 1984); Griffin v. Griffin, 699 P. 2d 407 (Colo. 1985). The award of joint custody over one parent's objection has been held to be an abuse of discretion because such disagreement demonstrates the parties' inability to cooperate concerning the child. Lampton v. Lampton, 704 P.2d 847 (1985); Kline v. Kline, 686 S.W.2d 13 (Mo. 1985).

■ Notwithstanding the strong presumption against an award of joint custody absent consent of both parents, this court declines to create an immutable rule that both sides must always agree to joint custody, because that would have the effect of granting one parent an absolute veto over the possibility of a joint custody award. As the Taylor court noted, supra at 973:

> A caring parent, believing that sole custody is in the best interest of the child, may forcefully advance that position throughout the litigation but be willing and able to fully participate in a joint custody arrangement if that is the considered decision of the court.

The best approach is to award joint custody only in the most exceptional case where there is not an agreement. In re Lampton, 704 P.2d 847 (Colo. 1985). This is not such a case.

Even if clear agreement is not an absolute prerequisite for an award of joint custody, the linchpin of such an arrangement must be the motivation and willingness of the parents to cooperate with one another in the interests of the child. Here, sadly, it is obvious that such a spirit is absent. The plaintiff and the defendant are preoccupied with resentment and disrespect toward one another. Much of their mutual rancor involves Shani. They do not share certain basic parenting values. Each accuses the other of misdeeds and omissions in the care and rearing of the child.

■ Joint custody would have virtually no chance of succeeding in view of the current attitudes of the parties and, as a result, such an award almost certainly would be detrimental to the emotional well-being of Shani. If the parents are at an impasse in their relations with each other and in their respective views of child-rearing, the child most likely will suffer from a joint custody arrangement in which neither parent has paramount authority. In a sole custody award, at least the parents will know who ultimately has the final say in the innumerable and varied decisions to be made in the rearing of their daughter. Under the circumstances, therefore, sole custody will be awarded to the defendant.

Although Mrs. Charles will have legal custody, she does not reach this result for either of the reasons she has expressed: control of the child's religious exposure or limitation on the father's rights of visitation of Shani.

As to church attendance, the court has no intention of interfering with the free right of either parent to expose the child to the religion of his or her choice. On this question, the court follows the general rule and takes an attitude of strict impartiality between the parents' religions, absent a "clear and affirmative showing that the conflicting religious beliefs affect the welfare of the child." Munoz v. Munoz, 489 P.2d 1133, 1135 (Wash. 1972). The record is barren of any evidence indicating that exposing this five year-old child to both Catholic and Seventh Day Adventist worship has been in any way harmful to her or is likely to be so in the future. Moreover, Mrs. Charles' objections to Shani's aunt taking her to religious services, as opposed to Mr. Charles himself, is without basis.

With respect to visitation, the parties have agreed to agree, without requiring the court to establish a detailed schedule. It is the intent and the spirit of this custody award, however, that the plaintiff have the most liberal possible visitation with his child,

which may include overnight stays with him at his home or elsewhere, along with extended visits during all or part of school holidays and summer vacations.

██ A corollary to the plaintiff's liberal visitation rights is the continued physical presence of Shani on St. Croix. Because of the history of extended trips to Dominica, it is important, notwithstanding legal custody being placed with Mrs. Charles, that Mr. Charles know where the child is and that he have access to her. Under the circumstances, neither party shall remove the child from St. Croix without the prior knowledge and express consent of the other, or unless so ordered by the court.

## ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that legal custody of Shani Charles, the child of the parties, is awarded to the defendant, subject to liberal visitation rights of the plaintiff; and it is further

ORDERED that neither party shall remove the child from St. Croix without the prior knowledge and express consent of the other, or, in the absence of such consent, court order.