Joseph L. TAYLOR, Appellant,

v.

Rachel TAYLOR, Respondent.

No. WD 50221.

Missouri Court of Appeals, Western District.

Oct. 24, 1995.

Loramel P. Shurtleff, Shurtleff, Froeschner, Bunn & Aulgur, Columbia, for appellant.

John T. Murray, Mid–Missouri Legal Services Corp., Columbia, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Joseph L. Taylor ("Father") appeals from the trial court's order modifying the decree which dissolved his marriage to Rachel S. Taylor ("Mother"). Father contends the trial court erred by: 1) denying Mother's request to change residences within the state of Missouri; 2) granting Mother's motion for child support; and 3) maintaining the joint custody arrangement. The judgment is affirmed.

In May of 1993, the parties' two-and-a-half year marriage was dissolved. There was one child born of the marriage, Ariel, who was born in July of 1991. The dissolution decree provided for joint custody of Ariel and awarded no child support to either party. The decree incorporated the parties' separation agreement and ordered the parties to perform the terms thereof. Pursuant to the separation agreement, each party was ordered to "provide for the support of the child when she is in his or her actual physical custody. They will share equally any of the expenses for the child's clothing, child care, and other miscellaneous and necessary expenses for the child."

Approximately one year later, Mother filed a motion to modify the dissolution decree. She sought sole custody of Ariel and child support in the amount of $450 per month due to a "substantial and continuing change in the circumstances of the child and the parties." Mother also requested "the Court's permission" to change her residence from Columbia, Missouri to West Plains, Missouri, in order to be closer to her terminally ill father. Father filed an answer which opposed Mother's motion for modification. Father also filed a counter-motion to modify the dissolution decree to give him sole custody of Ariel.

After a hearing, the trial court denied both parties' motions to modify the joint custody arrangement, granted Mother's request for child support in the amount of $450 per month and denied her request to change residences. Father appeals that order, presenting three points of error.

■ The decision of the trial court will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Father's first point on appeal contends the trial court erred by denying Mother's request to move to southern Missouri because the court lacked jurisdiction to prevent an intrastate move by a parent with joint custody rights. An appellate court will not reverse a judgment unless the trial court committed error "against the appellant" and the error materially affected the merits of the action. § 512.160.2, RSMo 1994; Rule 84.13(b). For error to be reversible, it must be prejudicial to the complaining party. *Duffy v. Rohan*, 259 S.W.2d 839, 844 (Mo. 1953). Error is not prejudicial where the appellant's rights are unaffected by the allegedly erroneous ruling. *Patison v. Campbell*, 337 S.W.2d 72, 76 (Mo.1960); *In re Marriage of Ray*, 820 S.W.2d 341, 344 (Mo.App.1991).

Father fails to demonstrate that the trial court's refusal to grant Mother's motion to change residences prejudiced him. Father's sole allegation of prejudice is that "had [Mother] actually moved to a different location in the state, the existing joint custody plan would become unworkable." This claim of prejudicial error is not of the type contemplated in *Patison* or *Ray*. This claim is not based on the actual decision itself, which clearly is not a ruling against Father, but on the effect of that decision on the joint custody order, a separate matter of interest to Father. If any party was prejudiced by the trial court's ruling it was Mother, and she did not appeal the court's decision.

■ In addition, a party may not complain on appeal of error in which he joined or acquiesced at trial. *Hilton v. Crouch*, 627 S.W.2d 99, 102 (Mo.App.1982). At the modification hearing, Father opposed Mother's request to change residences. Father testified that the move would make it "very difficult" for him to be able to see their child. He stated the joint custody arrangement would be "extremely impaired" if Mother was allowed to make the move, and asked the court to deny the request. Father's first point on appeal is denied.[1]

1. Issues concerning the trial court's subject matter jurisdiction are inherent in any case and may be raised *sua sponte* by the appellate court. *Grippe v. Momtazee*, 696 S.W.2d 797, 798 (Mo. banc 1985). It is not necessary for the court to consider the merits of Father's first point *sua sponte*, however, because Father's claim that the court lacked jurisdiction to prevent Mother's intrastate move does not go to the issue of the subject matter jurisdiction of the trial court. *See Scott Cty. School Dist. v. Com'n on Human Rights*, 872 S.W.2d 892, 893 (Mo.App.1994);

In his second point, Father challenges the trial court's award of child support to Mother because the court failed to make "specific findings of fact stating the basis upon which the award was made." Mother introduced into evidence a Form 14 the day of trial. The form included a presumed amount of child support of $450 per month. Father's Form 14 indicated his share of child support to be $491.04 per month. The trial court did not make specific findings regarding the calculations it used in determining the amount of child support. Rather, the court's order simply awarded Mother child support in the amount of $450 per month.

The guidelines for establishing child support obligations are set forth by Rule 88.01. The Rule creates a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount to be awarded by the trial court. The provisions of Rule 88.01 and Form 14 must be applied in all child support cases. *Sinclair v. Sinclair*, 837 S.W.2d 355, 358 (Mo.App.1992). The trial court must either award the presumed Form 14 amount or make a specific finding that the Form 14 calculation is unjust or inappropriate. *Id.* at 359.

In *Scoggins v. Timmerman*, 886 S.W.2d 135, 139 (Mo.App.1994), this court held the trial court is not required to make specific findings of its Form 14 calculations when it deviates from the Form 14 amount. *Scoggins* specifically rejected the notion that the trial court must complete a Form 14. *Id.* For purposes of appellate review, the Form 14 calculations utilized by the trial court "must be apparent from the record. . . ." *Id.*

Although *Scoggins* dealt with the issue of what findings a trial court is required to make when it deviates from the Form 14 amount, the rule in *Scoggins* applies equally to the situation where the Form 14 amount is adopted. This is seen by the statement in *Scoggins* that the Form 14 calculations need only be apparent from the record "whether the Form 14 amount is proper or 'unjust or inappropriate' after considering all relevant factors." *Id.* The trial court's award of $450

per month in child support was clearly an adoption of the amount of child support listed on Mother's Form 14. Accordingly, the calculations supporting the award need only be apparent from the record.

Application of this rule does not mean that trial courts may avoid the parameters established by Rule 88.01 and Form 14. The trial court "must take into consideration the factors set forth in Rule 88.01 and the calculations as provided in Form 14" in determining the amount of child support to be awarded. *Umphenour v. Umphenour*, 831 S.W.2d 764, 767 (Mo.App.1992). The issue here is not what steps the trial court must perform in determining child support, but what is required to be part of the record for purposes of appeal. The detail required is the same as in other court-tried cases; there must be substantial evidence in the record to support the court's findings. *Murphy*, 536 S.W.2d at 32; *Scoggins*, 886 S.W.2d at 139.

Mother testified at the modification hearing that she earned "approximately $750 a month." Her Form 14 listed her gross income as $800 per month. She also testified that her child care expenses were $200 per month and that Father had not been contributing anything to assist her in these costs. The Form 14s submitted by both Father and Mother listed Father's gross income as $1733 per month. The calculations used by the trial court in adopting Mother's Form 14 child support amount of $450 per month, namely Mother and Father's gross incomes and work-related child care expenses, are apparent from the record. Accordingly, there is sufficient evidence to support the trial court's award of child support.

A considerable portion of Father's argument under his second point concerns whether there was sufficient evidence of a change of circumstances to warrant modification of the prior court order concerning child support. This issue was not raised in Father's second point relied on and, therefore, is not presented for review. *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 245 (Mo.App.1993). The court has gratuitously undertaken a review of the issue and finds it

*Farrar v. Moore*, 416 S.W.2d 711, 713 (Mo.App.    1967).

has no merit. Father's second point is denied.

Father's third and final point challenges the trial court's decision to maintain the joint custody arrangement. Father contends the "plan was no longer in the best interests of the child in that the parties did not share commonality of belief concerning parental decisions and did not have the ability to function as a unit in making decisions affecting the child." Joint custody is not in the best interests of the child where the record indicates that the parents strongly disagree about how their child should be raised. *Kline v. Kline*, 686 S.W.2d 13, 16 (Mo.App.1984).

To modify custody, the trial court must find both a post-dissolution change in the circumstances of the child or the custodial parent and that "modification is necessary to serve the best interests of the child." § 452.410, RSMo 1994; *Schaffer v. Haynes*, 847 S.W.2d 814, 822 (Mo.App.1992). The trial court has considerable discretion in determining custody issues and appellate courts should not overturn the trial court's findings unless they are manifestly erroneous and the child's welfare compels another result. *Martin v. White*, 825 S.W.2d 379, 380 (Mo.App. 1992). The trial court is not bound by the parties' preference as to custodial arrangements. *Wenger v. Wenger*, 876 S.W.2d 735, 743 (Mo.App.1994). The paramount concern in child custody matters is the welfare of the child; the interests of the parents are secondary. *Id.* The decision reached by the trial court is presumed to have been done in the best interests of the child. *Rumbolo v. Phelps*, 759 S.W.2d 894, 895 (Mo.App.1988).

Father contends the testimony at the modification hearing demonstrates that there was a "deep division" between the parties on issues relating to their child. In support of this contention Father cites testimony by Mother which indicated the parties could not agree on child care issues. However, the trial court is not required to believe this testimony. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 955 (Mo.App.1995). The trial court may believe or disbelieve all, part or none of the testimony of any witness. *T.B.G.*

*v. C.A.G.* 772 S.W.2d 653, 654 (Mo. banc 1989). The question on appeal is whether there is substantial evidence to support the trial court's decision to retain the joint custody arrangement. *See Wenger*, 876 S.W.2d at 743.

Friends of Father and Mother testified that Ariel had a good relationship with both parents. In addition, Father's testimony at the modification hearing indicates that he and Mother, unlike the parents in *Kline*, have not "bitterly disagreed" about every factor of their child's upbringing. Father testified that since the dissolution decree had been entered, the parties had been providing for their child's needs "in the manner that was contemplated in the joint custody plan." He was "more than willing" to continue to work on the joint custody plan and believed it was in the best interests of the child to maintain the joint custody arrangement. Father testified that initially some time passed before the parties adjusted to the terms of the dissolution decree, but that their households had stabilized.

The testimony of Father supports a finding that the parties are "emotionally equipped to deal with each other as equal partners in the care of their child." *Brisco v. Brisco*, 713 S.W.2d 586, 590 (Mo.App.1986). Just as the parties' preferences should not dictate the trial court's decision on child custody, "one of the parents should not be able to veto such a court decision by failure to agree or failure to cooperate with the joint custody determination." *Kline*, 686 S.W.2d at 17. The record contains substantial competent evidence to support the trial court's decision to retain the joint custody arrangement. Father's third point is denied.

The judgment of the trial court is affirmed.

All concur.